# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH POLLACK, LYNN POLLACK, SUSAN ALDRICH, MARCUS WARREN, LISE WARREN, CHARLES SCHILLING, LYNDA SCHILLING, DOUGLAS TAYLOR, DEBORAH TAYLOR, DAVE DETTLING and EVIE DETTLING,

UNPUBLISHED
May 30, 2017

Plaintiffs/Counter-Defendants-
Appellants,

v

No. 330540; 331241
Lenawee Circuit Court
LC No. 14-005069-CZ

JEFFREY B. FRASER, DANIELLE FRASER, SUSAN BROWN and RUSSELL BROWN,

Defendants/Counter-Plaintiffs-
Appellees.

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

In **Docket No. 330540**, plaintiffs appeal as of right the September 15, 2015 order granting defendants' motion for sanctions and attorney fees and dismissing all counterclaims. In **Docket No. 331241**, plaintiffs appeal, by leave granted,[1] challenging the trial court's earlier orders granting defendants' motion for summary disposition, dismissing plaintiffs' complaint, and denying plaintiffs' motion to amend their complaint. We affirm.

## I. BACKGROUND

The plaintiffs in this action are the current owners of several "back lots" near Wamplers Lake in Lenawee County. Plaintiffs' properties do not contain any lake frontage; rather,

---

[1] *Pollack v Fraser,* unpublished order of the Court of Appeals, entered April 13, 2016 (Docket No. 331241).

plaintiffs claim a right to access Wamplers Lake through a ten-foot-wide strip of land upon which has been erected, at least at times, a dock extending into the lake. The record owners of the ten-foot strip are William and Elizabeth Gentner and Charles and Mary Lapham, premised on a 1926 deed. It appears uncontested that, sometime before 1980, all four of the record owners died without conveying away any interest they had in the ten-foot strip. Their interest in the strip is therefore presumed to pass to their respective heirs, none of whom have been located or are parties to the litigation at issue. Defendants—Jeffrey and Danielle Fraser and Susan and Russel Brown—are the owners of parcels directly neighboring both sides of that ten-foot-wide strip.

Sometime before 1980, the then-owners of the back lots erected a dock from or near the ten foot strip. The then-owners of defendants' properties filed suit to enjoin the then-owners of the back lots from encroaching on their property rights via this dock and using this dock in any way, including tying up rafts or pontoons. In 1980, the trial court issued the following ruling:

> [The back lot owners] have used the strip as an access to Wamplers Lake for many years. A dock of varying size and shape has been maintained at the end of the strip for many years. Boats have been tied to the dock for many years. Lately pontoon rafts have been moored there also. [The back-lot owners] have built, maintained and used the dock for boating, fishing, swimming, wading, and normal lake recreation usage.

> People on the other dead end streets of this subdivision have similar or larger strips of land as access to the lake extending from their streets to the lake.

> Our first problem is the ownership of the 10 foot strip. [The neighboring property owners] do not own it. [The back-lot owners] do not own it. . . .

> Joseph Scalabrino testified that Gentners and Lapham own the strip. . . . [W]e conclude Lapham and Gentners are still the record title holders. . . .

> Next, we go to the usage of the strip by [the back-lot owners] and by their predecessors. It was apparent the lot owners had been told by Gentner they could use the strip to get to the lake. While there was no testimony to that effect, it is more than reasonably possible that this was one of the factors which made the lots on Oak Street salable. With the number of lakes, summer cottage subdivisions, right of ways, easements and law suits involving them that we've seen down through over a quarter of a century of listening to trials in this county, we know "back" lots aren't of much value without access. In other words, the owner of the strip did not grant an easement, right of way, or written interest in the strip. They did grant a type of license and estoppel probably would prohibit the grantors, their heirs, and assigns from revoking that license should there be a legal contest over it.

> There was no permission from [the neighboring property owners] for the [back-lot owners] to use the strip, place the dock or moor boats to any dock.

[The back-lot owners] did not feel they had a right to willy nilly place boats, rafts, or docks out in the water in front of [their neighbors'] shore lines. They did, and do feel they can continue the practice of having a pier and tying boats and rafts to it.

Since the [back-lot owners] are not record title owners, they have no riparian rights as such title owners.

Gentner and Lapham were riparian or litterol [sic] owners. They gave permission to the [back-lot owners] to exercise the riparian rights the Gentners and Laphams had. This they could do.

[The neighboring property owners] own out to the middle of the lake. Riparian owners have no right of permanent anchorage on the submerged land of others.

The dock, if reasonable, is permissible as it is on the extension of the strip. The tying of boat to the dock, if reasonable, is permissible. The mooring of pontoon rafts is another story.

[The back-lot owners] have placed metal poles about 12 feet from the dock to tie the lake side of the rafts to. These poles must be in the bottom of the lake in submerged land owned by [the neighboring property owners]. [The neighboring property owners] granted no right to permanent anchorage on their submerged land. Is this permanent anchorage? Yes. While the poles probably are there only during the boating season, if continued for enough boating seasons, it would ripen into an easement by adverse use.

Has there been adverse use[] for 15 years? We carefully searched the testimony. Boats of all sizes have been tied to the dock for many years. For a time in the 60's, small docks were installed at an angle to the main dock and boats, and boat hoists were kept in connection with them. However, there has been no continuous adverse use[] of permanent anchorage with posts driven into the [neighboring property owner's] submerged land for 15 consecutive years. Therefore, [the back-lot owners] have no legal right to maintain such posts outside of the extension of the strip.

Next we get to the touchy question of the mooring of boats and rafts to the dock. If there is no encroachment on the submerged land of the [neighboring property owners], [the back-lot owners] have a right to tie boats and rafts to their dock as possessors of litterol [sic] or riparian rights. Even if they had no such riparian rights, they would have acquired such rights by adverse use[]. The riparian rights, of course, can be exercised only if they are reasonably used so as not to unreasonably interfere with others rights.

For the purposes of this law suit, we find that the dock length and the tying of boats and rafts to it, at the far end had been done in a reasonable exercise of

riparian rights. We would therefore enjoin only the use of anchorage that encroaches directly on and into the [neighboring property owner's] submerged land.

Sometimes we have had to set limits on the number of boats and where they might be placed on the docks. We feel it is unnecessary here at this time under the facts of our case. There simply was no evidence of present unusually crowded use of the dock. At the most, three or four boats or rafts had been tied to the far end, and these did not create an unreasonable interference with others rights.

The Irish Hills may be the best of all worlds for summer lake fun and recreation—but—with power boats, boat hoists, pontoon rafts and thousands of people all trying to use the surface of the waters for their aquatic equipment, there simply is not enough room for everyone without a little give on everyone's part.

A judgment in accordance to this opinion may be entered. Neither party having succeeded in full, no costs will be taxed. [Internal citations omitted.]

The trial court then entered an order permanently enjoining the back-lot owners from "the use of any anchorage that encroaches directly on and into the lands" of the neighboring property owners.

The parties in the current lawsuit dispute what rights, if any, were granted to the back-lot owners by way of the 1980 ruling. It appears to this Court that plaintiffs—the now-owners of the back lots—intended to use the access provided by the ten-foot strip more extensively than the prior owners via a dock that would allow for the mooring of more watercraft. Defendants apparently attempted to thwart this use by erecting two docks of their own. These docks were erected on either side of the ten-foot strip and prevent plaintiffs from mooring certain watercraft. Defendants' docks do appear to sit within defendants' respective property lines.

As initially considered, plaintiffs' complaint sought relief under the doctrines of trespass and private nuisance. The trial court granted defendants' motion for summary disposition on both claims, finding that the 1980 ruling granted plaintiffs a license to use the land. The trial court concluded that plaintiffs were attempting to relitigate the same issue conclusively determined by the 1980 trial court and dismissed the complaint in its entirety under MCR 2.116(C)(8) and (10). Plaintiffs thereafter filed a motion for reconsideration and to amend their complaint to include various new claims, including claims of adverse possession and prescriptive easement. The trial court denied this motion and plaintiffs filed the appeals now before us.

## II. ANALYSIS

Plaintiffs initially contend that the trial court erred in dismissing their original complaint. Plaintiffs assert the trial court misunderstood or failed to comprehend the prior 1980 ruling

-4-

regarding the property currently in dispute and their entitlement to riparian rights,[2] which they contend would permit the maintenance of a dock and the mooring of watercraft.

This Court reviews the decision of a trial court on a motion for summary disposition de novo. *Grosse Pointe Law Firm, PC v Jaguar Land Rover North America, LLC*, 317 Mich App 395, ___; ___ NW2d ___ (2016) (Docket No. 326312); slip op at 3. Defendants moved for summary disposition under both 2.116(C)(8) and (C)(10). MCR 2.116(C)(8) "tests the legal sufficiency of a complaint," *Wells Fargo Bank, NA v SBC IV REO, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328186); slip op at 8, while (C)(10) considers whether there remains a genuine issue of material fact for trial. In other words, a (C)(10) motion "tests the factual support for a party's claim." *Id*.

Plaintiffs' original complaint was comprised solely of claims of trespass and private nuisance, both of which fail, as a matter of law. Accordingly, we conclude that the trial court properly granted summary disposition to defendants on both claims.

*A Mere License Cannot Sustain a Private Nuisance Claim.* "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). In order to maintain an action for private nuisance, a plaintiff must prove that:

> (a) [the plaintiff] has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Id*. at 304.]

Specifically, "the gist of a private nuisance action is an interference with the occupation or use of land or an interference with servitudes relating to land." *Id*. at 303. Accordingly, plaintiffs' claim for private nuisance fails if they cannot prove that they hold an affected property interest.

Plaintiffs argue that they have a property interest byway of the 1980 trial court's purported recognition of their riparian rights in Wambler Lake. The 1980 trial court, however, did not recognize that the back-lot owners held riparian rights of their own. Indeed, the 1980 trial court ruled that "[s]ince the [back-lot owners] are not record title owners, they have no riparian rights as such title owners." Rather, the 1980 trial court ruled that the Gentners and

---

[2] We recognize that "[s]trictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985). Nonetheless, "the term 'riparian' is often used to describe both types of land, and will be used in such a manner in this opinion." *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010) (internal quotation marks and citation omitted).

Laphams held riparian rights, and that those parties granted the back-lot owners a "type of license" to use the rights they held.

Indeed, such a ruling comports with our long-held precedent regarding the divisibility of riparian rights from the accompanying land. Our Supreme Court has stated that "riparian rights are not alienable, severable, divisible or assignable apart from the land which includes therein or is bounded by a natural water course." *Thompson v Enz,* 379 Mich 667, 686; 154 NW2d 473 (1967). Yet, "[w]hile riparian rights may not be conveyed or reserved—nor do they exist by virtue of being bounded by an artificial water course—easements, licenses and the like for a right of way for access to a watercourse do exist and ofttimes are granted to nonriparian owners." *Id*. Accordingly, because plaintiffs' predecessors-in-interest did not premise their position in the 1980 litigation on any right of ownership to the 10-foot-strip, but rather maintained that the Gentners and Laphams, or their heirs, owned the strip, the 1980 trial court could not have concluded that plaintiffs' predecessors-in-interest enjoyed any riparian rights.

Thus, because they had no ownership interest in the ten-foot strip, the most the back-lot owners could have held in 1980 was a right of way to access the water via a license or an easement. And, whether the 1980 trial court ruled that plaintiffs' predecessors-in-interest held a license or an easement is dispositive of plaintiffs' claim for private nuisance. More specifically, where a plaintiff holds only a license to enjoy another's land for a limited purpose, the plaintiff cannot maintain an action for a private nuisance. Licenses are deemed to be "terminable at will by the grantor," and "because of their revocability, they do not create an interest in land." *Kitchen v Kitchen*, 465 Mich 654, 659; 641 NW2d 245 (2002). Rather, a license is a mere "*permission* to do some act or series of acts *on* the land of the licensor without having any permanent interest *in* it." *Id*. at 658 (emphasis added) (internal quotation marks and citation omitted). Accordingly, because a license creates no interest in land, the license holder cannot maintain an action for a private nuisance. See 2 Restatement Torts, 2d, § 821E, p 103 ("The liability for private nuisance exists only for the protection of persons having property rights and privileges, that is, *legally protected interests*, in respect to the particular use or enjoyment that has been affected").

For its part, an easement constitutes "a right to *use* the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Mich Dep't of Nat'l Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378; 699 NW2d 272 (2005) (internal citations and quotation marks omitted). Although an easement, similar to a license, is "generally confined to a specific purpose," *Id.* at 378-379, the defining characteristic of an easement is that it is a *right* to use the land, rather than a *permission* to use the land. For that reason, an easement is defined as "a limited property interest." *Id*. at 378. Accordingly, as an interest holder in the property, the holder of an easement may maintain an action for a private nuisance. See 2 Restatement Torts, 2d, § 821E, p 102-103 (stating that an easement owner has a legally protected interest in the use and enjoyment of the land sufficient to maintain an action for private nuisance).

The plain language of the 1980 trial court's ruling, recognizing a "type of license," strongly supports a finding that the trial court recognized that the back-lot owners held a true license rather than an easement. Additionally, as a property interest, an easement must be evidenced by a writing sufficient to satisfy the statute of frauds. *Kitchen*, 465 Mich at 661.

Because a license is a mere permission, "the statute of frauds is inapplicable." *Id*. at 659. As did the trial court in the instant case, the 1980 trial court found no evidence of any writing sufficient to satisfy the statute of frauds. This finding is supported by the absence of the 10-foot strip in the plat for plaintiffs' subdivision and the lack of any other writing presented to this Court on appeal. Accordingly, we conclude that the 1980 trial court properly recognized, as did the trial court in this case, that the back-lot owners held only a license to use the 10-foot strip to access the lake.[3] Because plaintiffs held only a license to access the lake, plaintiffs therefore could not maintain an action for private nuisance.

*A Mere License Also Cannot Support a Trespass Claim.* Similarly, that plaintiffs' hold only a license to use the ten-foot strip prevents them from maintaining an action for trespass. "A trespass is an unauthorized invasion upon the private property of another." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 705; 609 NW2d 607 (2000). Therefore, to the extent that plaintiffs' have failed to identify an unauthorized invasion onto *their* property, plaintiffs' are unable to maintain an action for trespass. Further, it appears to this Court that plaintiffs' allegations of trespass are largely premised on their assertion that defendants' docks on defendants' own property, in the manner erected, precluded plaintiffs from the use of the dock associated with the 10-foot strip to moor boats or to access the lake because of the resulting space restriction. We note that, even had plaintiffs' proven ownership of the ten-foot strip, these allegations are insufficient to maintain an action for trespass as they do not indicate an "unauthorized invasion" onto "private property." *Id.*

For these reasons, both of plaintiffs' initial claims fail as a matter of law. Essentially, to have any viable claim for relief, the claims would have to have been brought by the actual owners of the ten-foot strip. Accordingly, we conclude that the trial court properly dismissed plaintiffs' original complaint.

---

[3] Defendants contend that the 1980 ruling does not establish plaintiffs' right of way, but rather distinguish between the trial court's written findings and its written judgment, the latter of which failed to indicate that plaintiffs had any entitlement to a dock or mooring of boats. In support of their position, defendants reference the proscription that a trial court "speaks [only] through its written orders and judgments," but fail to include or recognize the remainder of the statement, which further explains that a trial court does not speak "through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Hence, there are two problems with defendants' position with regard to the contention that the written findings do not rise to the status of a written order of judgment. First, the trial court's factual findings were written and were not an "oral pronouncement." Second, the trial court's written findings indicate that "[a] judgment in accordance to this option may be entered," confirming the trial court's findings are a part of or the basis for the judgment that will ensue. The judgment further confirms this understanding in referencing not only the submission of proofs, but recognizing that it had "filed" its "written findings," indicating a greater formality and interrelationship between the two documents than intimated by defendants.

*The Trial Court Did Not Err by Denying Plaintiffs' Motion to Amend Their Complaint.*

Plaintiffs further argue that the trial court erred in denying their request to amend their complaint to add counts pertaining to adverse possession and prescriptive easement. Because plaintiffs did not seek to amend their complaint until they filed a motion for reconsideration, the issue is not properly preserved. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). This Court reviews unpreserved issues for plain error affecting substantial rights. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008) (internal citation omitted).

As discussed in *Kincaid v City of Flint*, 311 Mich App 76, 94-95; 874 NW2d 193 (2015):

> A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party. . . . Except as provided . . ., a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires. Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. Those reasons include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility. Further, . . . when the trial court summarily disposes of a case under subrules (C)(8), (C)(9), or (C)(10), the trial court shall give the parties an opportunity to amend their pleadings . . . unless the evidence then before the court shows that amendment would not be justified. [Internal citations and quotation marks omitted.]

The trial court indicated several reasons for its denial of plaintiffs' request to amend their complaint. Primarily, the trial court noted that plaintiffs' proposed addition of entirely different claims and the inclusion of other parties were more akin to an entirely new pleading rather than an amendment of the current complaint to conform to the proofs elicited in accordance with MCR 2.118(C)(1).[4] We agree.

An action for adverse possession or prescriptive easement is an action against the original property owner or his or her heirs and is intended to determine the property rights to the parcel at issue. Accordingly, such an action focuses largely on the conduct of the purported adverse possessor or prescriptive easement holder and the original owner. In contrast, an action for trespass or private nuisance largely presumes the plaintiff's property rights and focuses, instead,

---

[4] "When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment." MCR 2.118(C)(1).

on the conduct of the defendant trespasser or nuisance creator. Therefore, at least in the context of the instant dispute, especially given that the heirs of the original property holders have presumably not been located and were not listed as defendants in the initial complaint, these claims are more amenable to an entirely new action.

But, even more fundamentally, the trial court deemed that plaintiffs' proposed claims for adverse possession and prescriptive easement would be unavailing or futile. Again, we agree.

"To establish adverse possession, the party claiming it must show clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011) (internal quotation marks and citation omitted). In turn, a party claiming a prescriptive easement must show "use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007) (internal quotation marks and citation omitted).

With the filing of their motion to amend their complaint, plaintiffs argued that transfer of title to their properties served to revoke the license, rendering any continuing use of the 10-foot strip to be adverse or hostile to meet the requisite statutory period, especially with the use of tacking for successive property owners. *Kitchen*, 465 Mich at 658-659 ("In general, a license is revocable at will and is automatically revoked upon transfer of title by either the licensor or licensee."). Nonetheless, throughout this litigation and dating back to the 1980 litigation, plaintiffs and their predecessors-in-interest asserted permissive use of the 10-foot land strip in accordance with the license recognized in that earlier litigation, as well as that permission to use the property had never been revoked. Additionally, plaintiffs appear to have acted mainly in line with this asserted permission, utilizing the ten-foot strip only to access the lake and not for a use wholly inconsistent with a license (e.g., building a structure on the land). Moreover, in the motion to amend the complaint, plaintiffs continued to assert *permissive* use of the 10-foot land strip, undermining their alternative assertion that their claim is based on hostility and a claim of right. Therefore, by asserting, seemingly continuously, from at least 1980, that their claim to access the lake was permissive, plaintiffs are unable to contend that their use of the ten-foot strip was adverse, hostile, or under a claim of right. Accordingly, the trial court properly concluded that plaintiffs' adverse possession and prescriptive easement claims would be futile.

Purportedly plaintiffs also sought to amend their complaint to include claims of estoppel and acquiescence. Such claims would also be unavailing. Acquiescence has been defined in case law as being established "when a preponderance of the evidence establishes that the parties *treated* a particular boundary line as a property line." *Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d 888 (2009) (internal quotation marks and citation omitted). This case, however, has never suggested a concern or dispute pertaining to a boundary line, obviating the applicability of the concept of acquiescence. Similarly, a claim of estoppel is also unavailing, as "Michigan law does not permit an oral license to ripen into a permanent interest in the use of land on the basis of estoppel alone." *Kitchen*, 465 Mich at 663.

For these reasons, we conclude the trial court did not abuse its discretion by denying plaintiffs' motion to amend their complaint.

*The Trial Court Did Not Abuse its Discretion by Granting Sanctions.* Finally, plaintiffs contest the trial court's grant of sanctions to defendants under MCR 2.114, asserting their claims were brought in good faith and not for purposes of harassment and that they maintained a viable cause of action for adverse possession. Notably, plaintiffs only challenge the trial court's determination regarding the propriety of an award of sanctions and not the amount awarded.

This Court reviews a trial court's decision to award sanctions for an abuse of discretion, *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). The trial court's factual findings, including a determination of frivolousness, are reviewed for clear error, *Kitchen*, 465 Mich at 661. "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* at 661-662.

The 1980 trial court ruling clearly recognizes that plaintiffs hold only a license to use the ten-foot strip to access the lake. Seemingly continuously since then, plaintiffs have asserted that they had permission to use the ten foot strip. This permission plainly prevented plaintiffs from maintaining the claims in their initial complaint and the main claims in their proposed amendment to that complaint. The remaining claims proposed in plaintiffs' amended complaint are also clearly without factual or legal basis. Moreover, plaintiffs' erection of a dock within 24 hours of the trial court's verbal warning that any such action would be precluded by the trial court, necessitating defendants to seek a permanent injunction and incur additional costs and fees, is evidence of plaintiffs' bad faith.

Because the trial court sits in a better position than this Court to judge the conduct of the parties throughout the litigation, our ability to reverse the trial court's award of sanctions is properly limited to situations where the trial court has chosen an unprincipled outcome or where the record clearly belies the trial court's factual findings. On the record before us, we are unable to find either and must affirm the trial court's award of sanctions.

Affirmed.

/s/ Michael J. Riordan
/s/ Brock A. Swartzle