STATE OF MICHIGAN
COURT OF APPEALS

FRANK LAWRENCE,

        Plaintiff-Appellant,

v

CAREN M. BURDI and EARL, EARL & ROSE
PLLC,

        Defendant-Appellees.

FOR PUBLICATION
January 26, 2016
9:05 a.m.

No. 322041
Macomb Circuit Court
LC No. 2014-001417-CZ

Before: METER, P.J., and WILDER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right from a Macomb County Circuit Court order granting defendants' motion for summary disposition after the court concluded that the statements made by defendant Burdi (hereinafter defendant) were privileged, and that they could not be the basis of plaintiff's claims, and therefore plaintiff failed to state a claim that was actionable. We affirm in part and reverse in part.

## I. FACTUAL BACKGROUND

Plaintiff's claims of abuse of process and defamation arose from an underlying property dispute being litigated before Judge Jennifer Faunce (notably the same judge who presided over this case) in the Macomb Circuit Court, *Froling v Pelican Prop, LLC*, Docket No. 2013-003083-CZ. That case concerned a prescriptive easement claim brought by William P. Froling, plaintiff's employer, against Pelican Property, who was represented in the matter by defendant. Plaintiff, who passed the Michigan Bar Examination in 2001, but was unable to pass character and fitness and be admitted to the practice of law, acts as a liaison between Mr. Froling's various corporate entities and the law firms that represent those entities. The easement dispute centered on whether a restaurant business established on Mr. Froling's property was entitled to use property owned by Pelican Property for parking and trash bin storage. A main contention in that case was whether the restaurant's use of the property had been continuous over the past 15 years or not.

After one of Pelican's main witnesses—District Court Judge Michael Chupa—stated in an affidavit that the restaurant had been closed for "a substantial period of time, sometime between April 2004 and November of 2007," the case was publicized in the local news, which quoted plaintiff and identified him as Froling's "spokesman". Specifically, regarding plaintiff,

the article said, " 'We can show [continuous use] through continuous unbroken leases. We can show it through health inspection reports, through utility records and eyewitness accounts of owners, of employees and most importantly, customers,' said Frank Lawrence, spokesman for Titan Construction" (one of Froling's companies).

Shortly after the article was published, and *after* the closure of discovery in the Froling case, defendant submitted "Requests to Admit in the Froling v. Pelican Case," which asked for six admissions from Mr. Froling, including:

4. Please admit that Frank Lawrence has been denied the opportunity to take the attorney bar exam for the State of Michigan as he cannot pass character and fitness.

5. Please admit that Frank Lawrence has a felony drug conviction from 1996.

6. Please admit that Frank Lawrence has another drug conviction prior to 1996.

When defendant refused to withdraw the filing, plaintiff filed this suit, claiming abuse of process and defamation. Plaintiff asserted that the statements were not true and were "unrelated in any way to the litigation and were intended to maliciously defame a non-party." Also included in plaintiff's complaint, are allegations that in February 2014, while they waited for a facilitation proceeding in the Macomb County courthouse, defendant approached plaintiff and Froling and "questioned them in a disrespectful and hostile manner," before telling Froling "that he should be careful with whom he associates," in reference to plaintiff.

Plaintiff first filed a "Motion to Strike and Expunge," asking that the alleged defamatory requests to admit be stricken from the record and expunged from the court's computer system. Defendant's response to the motion argued that the trial court had no authority to strike discovery requests filed in a separate case. Plaintiff responded by withdrawing his motion to strike and replacing it with a motion to seal. He asserted that the statements, as part of the public record, were harmful to his reputation and were false in that he had no drug convictions and had in fact passed the Michigan bar examination. Plaintiff also filed a separate motion for sanctions under MCR 2.114(E), asserting that defendant had violated MCR 2.114(D) by filing a document that she knew had no factual basis, for the purpose of harassing and embarrassing plaintiff. In addition, he asked the court to seal the Board of Law Examiners opinion from 2006. Defendant then moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact).

The trial court first held the hearing on the motions to seal. Plaintiff argued that the statements, being in the form of requests to admit, appeared to the public as though they were statements of fact supported by evidence, and it was these untrue and misleading statements he wished to be sealed. Plaintiff's counsel also asserted that plaintiff's character was irrelevant to the property dispute. To this, the trial court responded, "[H]is name was thrown around an awful lot in those hearings . . . So, I tend to think he's a relevant party as far as a witness goes." When counsel asserted plaintiff was not a property manager but merely worked with Froling's lawyers in property disputes, the court asked, "Does he work with that particular property? His name came up an awful lot. To make me think that he's completely irrelevant to that lawsuit doesn't strike me as genuine." Counsel replied that plaintiff may not be "totally irrelevant to the lawsuit,

because he's helping the lawyers work in the lawsuit," but that "his history with the State Bar, has nothing to do with the Froling lawsuit." Ultimately, regarding the statement about the bar examination and the Board of Law Examiners opinion, the trial court found that "there are some legitimate question[s] regarding that, and . . . I'm not going to order that sealed." The two statements about drug convictions, however, the court ordered sealed. Subsequently, sanctions were not ordered; the entirety of the court's reasoning on that issue being: "I'm not issuing sanctions. I don't think it rose to the level of sanctions."

The trial court heard the motion for summary disposition a few weeks later. Defendant argued that the statements made in the requests to admit were made "within the context of the litigation" and so "the absolute immunity under the judicial proceedings privilege applies." Also, that the statement made in the courthouse hallway was only an opinion and, therefore, could not be the basis for a defamation claim. Defendant asserted that "the courts have consistently held that defamation cannot be an ulterior motive for an abuse of process" claim, and therefore, plaintiff's claims failed. Plaintiff responded by arguing that because plaintiff was not a party to the *Froling* case, his claim was not on equal footing with the caselaw defendant cited for the above propositions. Defendant replied that the trial court already noted that plaintiff was a witness and as a result, his character and credibility were relevant to the case and therefore protected by privilege.

The court noted that it had "let a lot of things come in after discovery was closed" and stated, "I think he [plaintiff] was always a potential witness." Regarding the statements about drug convictions, the court said "there wasn't anything to support the criminal, the alleged criminal allegation," but the court nevertheless reasoned, "[T]hat is part of the discovery process. I do believe that it is privileged." In addition, the court concluded that the statement made in the courthouse hallway "is opinion and you cannot show any ulterior motive."[1] For those reasons, the trial court granted the defendant's motion for summary disposition, stating that plaintiff "failed to state a claim for which could [sic] be actionable." Plaintiff appealed.

## II. MOTION FOR SUMMARY DISPOSITION

Plaintiff first argues the trial court erred in granting defendant's motion for summary disposition in regards to his claims for abuse of process and defamation. An appellate court "review[s] de novo a decision on a motion for summary disposition." *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 286; 818 NW2d 460 (2012). It must be noted that the trial court's ruling in favor of summary disposition does not expressly state whether the motion was granted under MCR 2.116(C)(8) or MCR 2.116(C)(10). Based upon the trial judge's

---

[1] It appears the trial court mistakenly combined aspects of defamation (opinions) with aspects of abuse of process (ulterior motive). To be clear, our Supreme Court said in *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 128; 793 NW2d 533 (2010), that "a statement of opinion is not automatically shielded from an action for defamation because expressions of opinion may often imply an assertion of objective fact . . . [A] statement of opinion that can be proven to be false may be defamatory because it may harm the subject's reputation or deter others from associating with the subject." (quotation marks and citations omitted.)

comment, "I do believe that it is privileged and, therefore, I think on that portion you failed to state a claim for which [sic] could be actionable," and its similarity to the language of MCR 2.116(C)(8), this court presumes that the motion for summary disposition was granted for failure "to state a claim on which relief can be granted," under MCR 2.116(C)(8). Accordingly,

> [a] motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews . . . a motion under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. All factual allegations supporting the claim, and any reasonable inference or conclusions that can be drawn from the facts, are accepted as true. [*Averill v Dauterman*, 284 Mich App 18, 21; 772 NW2d 797 (2009), quoting *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998)]

## A. ABUSE OF PROCESS CLAIM

"Abuse of process is the wrongful use of the process of a court. This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear v Pendill*, 164 Mich 620, 623; 130 NW 343 (1911) (quotation marks omitted). "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc*, 412 Mich 1, 30; 312 NW2d 585 (1981). Expanding on each of the elements, the *Friedman* court went on to explain that the act must be something more than just initiation of a lawsuit and the ulterior purpose has to be something other than settling a suit. *Id.* at 31. Justice Cooley, in his treatise on torts, stated "One way in which process is sometimes abused, is by making use of it to accomplish not the ostensible purpose for which it is taken out, but some other purpose for which it is an illegitimate and unlawful means." Cooley, Treatise on the Law of Torts, or the Wrongs which Arise Independently of Contract (3d ed), p 356.

Turning now to the requests to admit filed in the *Froling v Pelican* case, this device is governed specifically by MCR 2.312 and more generally by MCR 2.302. MCR 2.302(B)(1) regarding the scope of discovery, provides that in general:

> Parties may obtain discovery regarding any matter, not privileged, *which is relevant to the subject matter involved in the pending action*, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. [Emphasis added.]

MCR 2.312(A) states:

Within the time for completion of discovery, a party may serve on another party a written request for the admission of the truth of a matter within the scope of MCR 2.302(B) stated in the request that relates to statements or opinions of fact or the application of law to fact . . .

There is no doubt that filing requests to admit is an act of process, the purpose of which was given by our Supreme Court in *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 419-420; 551 NW2d 698 (1996):

MCR 2.312 is modeled after FR Civ P 36, and serves two vital purposes:

Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be. [Advisory Committee note of 1970 to amend rule 36.]

By encouraging admissions . . . the goal of the rule . . . [is] to expedite the pending action.

"[R]equests for admission are used to establish admission of facts about which there is no real dispute." 7 Moore's Federal Practice (3d ed), § 36.02[1], p 36-5. Similarly, Michigan's court rule has "a two-fold function: (1) to limit the areas of controversy and (2) to save time, energy and expense that would otherwise be required for preparing proof and submitting evidence on matters properly subject to admission." 2 Longhofer, Michigan Court Rules Practice (6th ed), Rule 2.312, § 2312.3, p 429.

Plaintiff contends that defendant's filing of the request to admit did not serve any legitimate purpose stated above, but instead claims in his complaint that it was filed "with the intent to cause harm to [the plaintiff]" by "defam[ing] and harm[ing] a non-party to the litigation." With these filings being made to plaintiff's employer, the intended purpose appears to be harm resulting from embarrassment, mistrust by his employer, and even possible termination of employment. The requests to admit in no way limited the areas of controversy or saved the parties time, energy and expense. In fact, the result has been quite the opposite—more time, energy and money has been spent by all parties involved, arguing over an area that was never previously in controversy, due directly to the request to admit being filed by defendant. Therefore, plaintiff successfully stated a cause of action for abuse of process in his complaint and accordingly, summary disposition was improper.

B. DEFAMATION CLAIM

"A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 702; 609 NW2d 607 (2000).

The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4)

either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). [*Id.*]

It has long been established that "words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal." *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 727-728; 613 NW2d 378 (2000). With the first element of a defamation claim being a false statement, it naturally follows that a statement which is "substantially true" is a defense to a charge of defamation by implication. See *Hawkins v Mercy Health Servs*, 230 Mich App 315, 332-333; 583 NW2d 725 (1998). Furthermore, defendants in defamation suits are not required to prove the statement is "literally and absolutely accurate in every minute detail." *Rouch v Enquirer & News of Battle Creek Michigan*, 440 Mich 238, 258; 487 NW2d 205 (1992).

The plaintiff's complaint asserts that the basis for the defamation claim is the requests to admit, as described above, that allege the plaintiff was disallowed from sitting for the bar exam in Michigan and that plaintiff had drug convictions, both prior to and in the year 1996.[2] There does not seem to be any dispute that the fifth and sixth statements, those about plaintiff's alleged drug convictions, had no factual basis and were entirely false. The fourth statement, that plaintiff was denied the opportunity to take the state bar examination because of character and fitness, is more capable of being considered substantially true. In determining if a statement is substantially true or not, the Michigan Supreme Court has said:

a slight inaccuracy in one of its details will not prevent the defendant's succeeding, providing the inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce . . . Thus, the test looked to the sting of the article to determine its effect on the reader; if the literal truth produced the same effect, minor differences were deemed immaterial. [*Rouch*, 440 Mich at 259, quoting *McAllister v Detroit Free Press Co*, 85 Mich 453, 460-461; 48 NW 612 (1891).]

Here, Froling was fully aware that plaintiff was not a member of the state bar but also had been told that plaintiff had "multi-stated" the bar examination and his intellect was considered a valuable asset and reason he was hired.[3] The Board of Law Examiners' opinion expressly stated that plaintiff "took the July 2001 Michigan bar examination and received a passing score."[4] The inaccurate statement caused Froling to question if plaintiff has been fully truthful with him during his employment interview regarding the bar examination. Therefore, defendant's

---

[2] The statement made by defendant in the hallway to Mr. Froling, that he should be careful with whom he associates, in reference to the plaintiff, is nothing more than a platitude, which we find unactionable.

[3] Affidavit of Carole Froling, pp 1-2.

[4] In re Lawrence, MBLE Opinion, issued June 14, 2006, 1.

statement that plaintiff "has been denied the opportunity to take the attorney bar exam for the State of Michigan as he cannot pass character and fitness" had a very different effect on the persons to whom it was published (Froling), than had it been a completely accurate statement. Because it specifically was false in the most relevant fact, it is difficult to characterize the statement as having "a slight inaccuracy in one of its details." The burden at trial is for the plaintiff to prove falsity. Although the statement about plaintiff's character and fitness seems substantially true to the general reader, the effect it had on the persons to whom it was published, plaintiff's employer, was very different from the effect a purely accurate statement would have had.

Plaintiff further pleads that the statements regarding drug convictions are "defamation per se . . . and . . . do not require proof of damage to [plaintiff's] reputation." Assertions that someone has prior drug convictions are certainly "accusations of criminal activity [and] are considered 'defamation per se' under the law and so do not require proof of damage to the plaintiff's reputation." *Ghanam v Does*, 303 Mich App 522, 545; 845 NW2d 128 (2014). Defendant's main argument regarding the defamation claim is the protection afforded by the judicial proceedings privilege. Plaintiff argues that the communications made by defendant were unprivileged because they "were not relevant, material or pertinent" to the underlying litigation. This issue is discussed next.

## C. DEFENSE OF JUDICIAL PROCEEDINGS PRIVILEGE

Defendants argued and the trial court found persuasive in its granting of summary disposition, that the statements made in the request to admit were made during the course of discovery, and thus fall under the judicial proceedings privilege, thereby barring plaintiff's causes of action. We disagree.

"Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are *relevant*, *material*, *or pertinent* to the issue being tried." *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006) (emphasis added). "The immunity extends to every step in the proceeding and *covers anything that may be said in relation to the matter at issue*, including pleadings and affidavits." *Couch v Schultz*, 193 Mich App 292, 295; 483 NW2d 684 (1992) (emphasis added). What a litigant considers to be pertinent or relevant is given much freedom, and the privilege is liberally construed as a matter of public policy "so that participants in judicial proceedings may have relative freedom to express themselves without fear of retaliation." *Sanders v Leeson Air Conditioning Corp.*, 362 Mich 692, 695; 108 NW2d 761 (1961) (internal quotation marks and citation omitted); see also *Couch*, 193 Mich App at 295. The statement need not be "strictly relevant to any issue involved" in the litigation. 3 Restatement Torts, 2d, § 586, cmt c, p 248. All that is required is that the publication has "some reference" to the subject matter of the litigation; however, the privilege does not extend to matters that have "no connection whatever with the litigation." *Id*. From this, it appears that the statements' relevance or pertinence to the issue being tried—the existence of a prescriptive easement—is determinative of whether they were protected by the privilege.

In the record for this case, there is absolutely no evidence that plaintiff's character has any relevance or pertinence. When the trial court granted defendant's motion, it agreed with

defendant that plaintiff was a potential witness for the reason that his name "came up a lot" in the easement case. But there is no evidentiary support for that conclusion, and defendant notably has not attached copies of transcripts from the easement case or even the witness list she allegedly filed after submitting the requests to admit, which supposedly named plaintiff as a witness. On the record before this Court, there is no evidence to support the assertion that plaintiff's name "came up a lot," or that his prior struggles with the Board of Law Examiners and alleged history of drug convictions were relevant, pertinent, or material to the Froling case or that they would shed any light on the easement issue. Indeed, the proceedings in the underlying *Froling* case support the conclusion that the admissions sought in the requests served no purpose in resolving that case; the court apparently never granted an allowance to the late filing, the requests were never actually answered, defendant apparently never pursued answers, and neither plaintiff's name nor his character make even a passing appearance in the court's final judgment.

Defendant, in her brief, relies considerably on the assertion that a presumption of relevancy of the statements arises once it is established that the statements were made during the course of a judicial proceeding. See *Sanders*, 362 Mich at 695-696. This, however, is a bit of a muddy area in defamation law. *Sanders* did not make that statement as a rule of law, but instead as a quote of the trial court's language in that case, without ever expressly endorsing the concept. *Id*. In Michigan, the source of this "presumption" seems to be *Hartung v Shaw*, 130 Mich 177; 89 NW 701 (1902). In *Hartung*, the court stated:

> If statements made in the course of judicial proceedings, in pleadings, or in argument are relevant, material, or pertinent to the issue, their falsity or the malice of their author is not open to inquiry. They are then absolutely privileged . . .

> Where a party shows in his declaration a publication presumptively privileged, it is his duty, in order to recover, to prove that the words spoken were not pertinent or relevant, and that they were not spoken bona fide. If it be necessary to prove this, it is equally necessary to allege it. [*Id*. at 179-180 (citations omitted).]

In short, the "presumption" identified in *Hartung* is another way of saying that the burden is on the plaintiff to allege and then prove that statements made in the course of judicial proceedings, including pleadings and argument, have no relevance, pertinence, or materiality to the matter being litigated. Plaintiff sufficiently made that allegation in his complaint.

Moreover, defendant's pleadings fail to explain, and it is not facially apparent, how the character of a nonparty who is also not a potential eyewitness has any "reference" to the subject matter of the easement litigation. 3 Restatement Torts, 2d, § 586, cmt c, p 248. Taking as true plaintiff's argument that defendant filed the requests to admit in retaliation for his public statements about the case, defendant's conduct seems to turn upside down the public policy behind the privilege, that is, to permit participants in judicial proceedings to be relatively free to express themselves without fear of retaliation. *Sanders*, 362 Mich at 695.

## III. DENIAL OF SANCTIONS

This Court reviews de novo whether the trial court properly interpreted and applied the relevant court rules to the facts, Brecht v Hendry, 297 Mich App 732, 736; 825 NW2d 110

(2012), and "review[s] for clear error the trial court's determination whether to impose sanctions under MCR 2.114." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made. *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 693; 760 NW2d 574 (2008).

In regards to the trial court's ability to levy sanctions against an attorney, MCR 2.114(D) provides that:

> The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) *the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* [Emphasis added.]

"If a document is signed in violation of this rule, the court . . . shall impose upon the person who signed it . . . an appropriate sanction . . . " MCR 2.114(E).

The requests to admit asked Froling to "admit that Frank Lawrence has been denied the opportunity to take the attorney bar exam for the State of Michigan as he cannot pass character and fitness." Although the statement itself is not entirely true in the specifics, defendant contends that it indicates that plaintiff was denied bar admission because of character and fitness, which is true. The Board of Law Examiners decision supports this broader contention, even though it contradicts the specific assertion that plaintiff was not allowed to take the bar examination. From the broader point of view, the document was reasonably attached to defendant's motion for the purpose of providing support for her argument that plaintiff was denied bar admission. The trial court's conclusion that the filing did not rise to the level of being harassment does not leave this Court with a definite and firm conviction that a mistake was made, *Univ Rehab Alliance, Inc*, 279 Mich App at 693. Therefore, we affirm the trial court's denial of sanctions against defendant and her attorneys.

## IV. CONCLUSION

Accordingly, we affirm the trial court's decision to deny plaintiff's motion for sanctions against defendant and their attorneys. However, we conclude that plaintiff sufficiently stated claims for abuse of process and defamation, upon which relief can be granted. Therefore we reverse the trial court's granting of summary disposition in favor of defendant.

/s/ Patrick M. Meter
/s/ Kurtis T. Wilder
/s/ Amy Ronayne Krause