*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JON STEENLAND and ANNA STEENLAND,

     Plaintiff,

and

PAUL FESSLER,

     Plaintiff-Appellee/Cross-Appellant,

v

ANN S. TOUSCIUK,

     Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
May 16, 2019

No. 341084
Ogemaw Circuit Court
LC No. 15-659789-CH

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant Ann Tousciuk appeals an order after a bench trial determining the scope of an express easement that she reserved for herself when she conveyed waterfront property. Defendant also challenges an order denying her motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff Paul Fessler cross-appeals,[1] challenging a determination regarding the scope of the easement. We affirm.

---

[1] As used in this opinion, "plaintiff" refers to plaintiff Paul Fessler.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant previously owned all four parcels at issue in this case: lots 772, 780, 781 and 782 of the Lake Ogemaw No. 7 Subdivision.[2]



In 2002, defendant sold lots 781 and 782 to Michael and Janis Altomare. The deed reserved an easement for lots 772 and 780:

> The Grantors reserve an easement over the East 20 feet of Lots 781 and 782 of Lake Ogemaw No. 7 Subdivision for ingress and egress to Lake Ogemaw and for the personal use and occupation by the owners of Lots 772 and 780 of Lake Ogemaw No. 7 Subdivision.

Defendant continued living on lot 772 until 2005 when she sold it to Jon and Anna Steenland. Before that transaction, defendant extinguished the easement benefitting lot 772. Defendant built a home on lot 780 and began living there in 2006. In 2007, plaintiff purchased lots 781 and 782 from the Altomares.

In 2015, the Steenlands brought suit arguing that defendant's use of the easement went beyond its scope. Specifically, the Steenlands objected to defendant mooring her boat, storing personal property, and constructing a fire pit on the easement. Plaintiff was later added as a

---

[2] At the time, defendant co-owned the properties with her then-husband. However, defendant is now the sole owner of the dominant estate, lot 780. For simplicity, we omit reference to the ex-husband's co-ownership.

party, and the Steenlands were dismissed from the suit after it was established that they had sold lot 772.

Defendant sought summary disposition under MCR 2.116(C)(10) and attached an affidavit in which she affirmed, as grantor, that it was her intent at the time of the easement's creation to insure that she could continue to do those activities that she had previously enjoyed on lots 781 and 782. These activities included "storing and using outdoor recreational items and maintaining seasonal boat mooring." She further attested that every activity that she had engaged in since the easement's creation was within the intended scope of the easement. The trial court denied this motion, concluding that the easement's language, specifically the words "personal use" and "occupation," was ambiguous and created a genuine issue of material fact regarding the scope of the easement.

The matter proceeded to a bench trial, where the trial court considered extrinsic evidence to determine defendant's intent at the time of the easement's creation. The court heard testimony from defendant, plaintiff and Jon Steenland regarding defendant's use of the easement. The court also received numerous exhibits into evidence. Ultimately, the trial court concluded that the easement's scope (1) permitted seasonal mooring of one watercraft (e.g., a boat, a jet ski, a kayak, or a canoe); (2) prohibited a dock, permanent structures, and storage of personal property; and (3) permitted sunbathing and picnicking so long as tables, lawn chairs, and other personal property were removed after the activity was concluded for the day.

## II. ANALYSIS

## A. SUMMARY DISPOSITION

Both parties raise issues relating to the trial court's decision to deny defendant summary disposition. Defendant argues that the trial court erred in denying her motion because plaintiff failed to produce any evidence disputing her affidavit as to how at the time of drafting she intended to use the easement.[3] Plaintiff argues on cross-appeal that the easement language is not ambiguous, which is the same argument he presented to the trial court in opposing defendant's

---

[3] We review de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A party brings a MCR 2.116(C)(10) motion when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 415. We "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.

motion for summary disposition.[4]  We conclude that the easement language is ambiguous and that the trial court correctly denied defendant's motion for summary disposition.

"[T]he use of an easement must be confined strictly to the purposes for which it was granted or reserved." *Blackhawk Development Corp v Village of Dexter*, 473 Mich 33, 41; 700 NW2d 364 (2005).  The language creating the easement is the best indicator of the parties' intent.  See *id*. at 42.  "Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Little v Kin*, 468 Mich 699, 701; 664 NW2d 749 (2003).  However, "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Id*.  Generally, easements are interpreted using the rules of contract interpretation. *Wiggins v Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011).

The easement language in this case is ambiguous because it uses the word "occupation," a term that is inherently ambiguous in the context of an easement.  Occupation is defined in pertinent part as "the possession, use, or settlement of land: OCCUPANCY." *Merriam Webster's Collegiate Dictionary* (11th ed).  In turn, occupancy is defined in relevant part as "1. the fact or condition of holding, possession, or residing in or on something.  2.  the act or fact or taking or having possession (as of unowned land) to acquire ownership." *Merriam Webster's Collegiate Dictionary* (11th ed).  These definitions, suggesting residency and ownership of land, are inconsistent with the concept of an easement, which is the right to *use* land owned by another. *Penrose v McCullough*, 308 Mich App 145, 148; 862 NW2d 674 (2014).  Further, the definitions refer to possession without qualification, yet "[a]n easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement *qualified* possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997) (emphasis added).  For those reasons, the application of a right of "occupation" with respect to an easement is unclear and open to interpretation.  Accordingly, the trial court correctly concluded that the text of the easement is ambiguous.

Generally, if a contract is ambiguous then "factual development is necessary to determine the intent of the parties, and summary disposition is inappropriate." *Michaels v Amway Corp*, 206 Mich App 644, 649; 522 NW2d 703 (1994).  Nonetheless, defendant argues that she was entitled to summary disposition because plaintiff did not produce any evidence disputing her affidavit explaining her intent for the easement.  Defendant correctly recites the shifting burdens of proof for summary disposition, but we disagree that her affidavit established that there were no disputed factual issues.  See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).

The grantor's intent controls the scope of an easement. *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 88; 662 NW2d 387 (2003).  However, we agree with the trial

---

[4] We review de novo the trial court's conclusion that the easement language is ambiguous.  See *Klapp v United Uns Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

court that defendant's affidavit did not warrant summary disposition. While affidavits can create questions of fact, they do not mandate summary disposition. See *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991) (explaining that affidavits "do not resolve issues of fact. Their purpose is to help the court determine whether an issue of fact exists."). Further, "where the truth of a material factual assertion of a moving party is contingent upon credibility, summary disposition should not be granted." *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005). As will be discussed below, defendant's testimony regarding her intent in creating the easement required a credibility determination. For those reasons, the trial court did not err in denying defendant's motion for summary disposition.

## B. BENCH TRIAL

Both parties rely on the rule that the scope of the easement must be determined based on the circumstances existing at the time of the grant. From there, defendant argues that trial court abused its discretion in allowing plaintiff and Jon Steenland to testify to defendant's use of the easement years after it was created. Plaintiff, on the other hand, argues that the trial court's ruling amounts to clear error because there was no evidence that defendant moored a boat on the easement at the time it was created. Defendant also argues that the scope of the easement, as determined by the trial court, is inconsistent with her stated intent. Finding no clear error or abuse of discretion in the trial court's opinion, we affirm.[5]

To determine an easement's scope, "it is necessary to determine the true intent of the parties at the time the easement was created." *Wiggins*, 291 Mich App at 551. "The scope of an easement encompasses only those burdens on the servient estate that were contemplated by the parties at the time the easement was created." *Id*. at 551-552. Additionally, an easement's use "must be confined strictly to the purposes for which it was granted or reversed. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957).

Contrary to defendant's argument, the trial court did not rely on Jon Steenland's and plaintiff's testimony to determine the circumstances surrounding the easement at the time of creation. Instead, the trial court ruled that both Steenland's and plaintiff's testimony was

---

[5] After a bench trial, we review a trial court's factual findings for clear error and review de novo its conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "The extent of a party's rights under an easement is a question of fact . . . ." *Blackhawk*, 473 Mich at 40. Clear error occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016). We review the trial court's evidentiary decisions for an abuse of discretion, which occurs when the trial court reaches a decision outside the range of reasonable and principled outcomes. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

relevant because it addressed the central issue of whether defendant had *exceeded* the scope of the easement. While Steenland and plaintiff did not own their lots at the time the easement was created, they both observed defendant's use of the easement for years. The trial court, therefore, ruled that these witnesses could not address "the ultimate question as to the scope" but that their testimony was relevant and permissible "for evidence as to change in the . . . use of the easement, unilateral use of the easement by the dominant estate." In other words, the trial court relied on their testimony to determine whether plaintiff's actions were materially increasing the burden on the servient estate. Thus, the trial court's evidentiary decision was not an abuse of discretion.

Further, in determining the scope of an easement, a trial court is permitted to consider evidence of past or historic use of the easement after its creation. See *Dobie v Morrison*, 227 Mich App 536, 541-542; 575 NW2d 817 (1998) (affirming the trial court's decision that the defendants could use the easement "as they had done 'traditionally and historically' "). We also note that the Supreme Court has directed trial courts to consider "extrinsic evidence"[6] when ambiguous easement language exists without restricting that evidence to the circumstances existing at the time of the grant. *Little*, 468 Mich at 700. In this case, the trial court was plainly relying on defendant's historical use of the easement to determine her original intent in creating the easement. We see no clear error in this approach.

Nor did the trial court clearly err in finding that the seasonal mooring of one watercraft was contemplated as a use when the easement was created in 2002. Plaintiff focuses on the fact that there was no evidence that defendant seasonally moored a boat on the easement from 2002 through 2005. Although it is true that defendant did not moor a boat for years after the easement's creation, the intent of the parties at the time of the easement's creation is the dispositive issue. Defendant testified that she owned a pontoon boat prior to the easement's creation. Defendant also testified that prior to easement's creation she had kept a pontoon boat, jet skis, and row boats on the shoreline. Thus, there was evidence that plaintiff reserved the easement for the purpose of mooring watercraft on the shoreline. Further, even though defendant sold the pontoon boat in 2005, she purchased another pontoon boat sometime after 2012. She testified that she used and seasonally moored a jet ski on the easement in the interim. While defendant did not continuously moor a watercraft on the easement, inaction does not necessarily equal lack of intent. Accordingly, the trial court's determination regarding mooring was not clearly erroneous.

Finally, defendant argues that the trial court's decision was clearly erroneous because it is inconsistent with the grantor's stated intent, i.e., defendant's testimony that she believed she could do "[a]nything" on the easement. The trial court expressly found that defendant's testimony regarding her intent was self-serving, or in other words, not fully credible. And we give special deference to the trial court's factual findings when they are based on a credibility determination. MCR 2.613(C); *HJ Tucker and Assoc, Inc v Allied Chucker and Engineering Co*, 234 Mich App 550, 563; 595 NW2d 176 (1999). Defendant provides us no caselaw holding that

---

[6] Extrinsic evidence includes the parties' conduct and past practices. *Klapp v United Uns Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003).

the grantor's testimony as to her intent is dispositive. Although a trial court is tasked with discerning the grantor's intent in creating the easement, the grantor's testimony is not the sole evidence of that intent, particularly when the grantor has an interest in the outcome of the litigation. In this case, the trial court gave more weight to how defendant actually used easement.

In doing so, the trial court was not persuaded that allowing permanent structures or the storage of personal property on the easement was contemplated as an acceptable use when the easement was created. Indeed, the evidence was that plaintiff moved the fire pit off the easement in 2002. Steenland testified that there was neither a fire pit nor a picnic table on the easement when he purchased his lot in 2005. Thus, the record evidence indicates that plaintiff did not begin storing those items on the easement until at least 2006, and so the trial court properly determined that allowing permanent fixtures or the storage of personal property on the easement would materially increase the burden on the servient estate.

Defendant does not address the trial court's reasoning or explain why the court's findings were clearly erroneous. Instead, she contends that the trial court erroneously imposed a continuous-use requirement on her easement. However, the trial court clearly was not applying such reasoning because it ruled that seasonal mooring was permitted even though defendant did not continuously engage in that activity.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering