*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

XZUN BELLEFANT and SHONITA CARREKER,
Individually and as Next Friends to J. DOE, a Minor,

Plaintiffs-Appellants,

v

MATRIX HUMAN SERVICES, BRAD COULTER,
JANICE CARDWELL, and LEWANDA GIPSON,

Defendants-Appellees.

UNPUBLISHED
September 21, 2023

No. 362555
Wayne Circuit Court
LC No. 20-005555-CZ

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs, individually and as next friends to their minor child, appeal by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116 (C)(7), (8), and (10). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Xzun Bellefant is the former assistant director of adult services for defendant Matrix Human Services. Bellefant and plaintiff Shonita Carreker have a child, J. Doe, who attended a Head Start program at Matrix. In February 2017, Matrix received a complaint that Bellefant was involved in a romantic relationship with another Matrix employee, "LE." Following an investigation, Matrix and Bellefant entered into a release and separation agreement under which Bellefant would resign his employment with Matrix, effective February 27, 2017, in exchange for a severance package. The agreement also provided that Bellefant would release all claims related to his employment with, and separation from, Matrix. After Bellefant left Matrix, Carreker filed a grievance against LE's longtime partner—a family advocate worker at Matrix's Samaritan Center where J. Doe attended the Head Start program—accusing the worker of sexual harassment.

Approximately one month after Bellefant resigned, Carreker also allegedly threatened Cherita Horton, a Matrix employee who worked at the Samaritan Center. Following this incident, Horton obtained a personal protection order (PPO) against Carreker. The PPO was terminated

following a court hearing approximately two weeks later. However, after these events transpired, Carreker was no longer permitted to take J. Doe to or from the Head Start program at Matrix.

Plaintiffs filed this action on April 21, 2020. Although their complaint alleged nine counts, only their claims for intentional infliction of emotional distress ("IIED") and abuse of process are at issue on appeal. In support of these claims, plaintiffs alleged that defendants abused the judicial process and engaged in extreme and outrageous conduct by obtaining a PPO for the ulterior purpose of preventing J. Doe from attending the Head Start program at Matrix, and that defendants' conduct caused them severe mental anguish and emotional distress.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). As relevant to this appeal, defendants argued that they were entitled to summary disposition under MCR 2.116(C)(7) because Bellefant's IIED and abuse-of-process claims were barred by the terms of the release he signed as part of the severance agreement. Defendants further argued that Carreker's IIED and abuse-of-process claims were subject to dismissal under the applicable three-year statute of limitations, MCL 600.5805, because the claims would have accrued on or before April 5, 2017—when the PPO was issued—and plaintiffs did not file their complaint until April 21, 2020, more than three years later. Defendants also argued that they were entitled to summary disposition under MCR 2.116(C)(10) because there was no factual support for Carreker's contention that they abused the judicial process by obtaining the PPO.

Following a hearing, the trial court agreed that Bellefant's IIED and abuse-of-process claims were subject to dismissal under MCR 2.116(C)(7) on the basis of the release agreement, but also determined that the claims lacked factual support, warranting summary disposition under MCR 2.116(C)(10). The court dismissed Carreker's IIED and abuse-of-process claims under MCR 2.116(C)(7) on the basis that they were barred by the statute of limitations, and also concluded that the claims lacked factual support, warranting dismissal under MCR 2.116(C)(10). This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), but only Subrules (C)(7) and (C)(10) are relevant to the claims at issue in this appeal. Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred on the basis of a "release" or the "statute of limitations." When reviewing a motion under MCR 2.116(C)(7), this Court "must accept as true all of the plaintiff's well-pleaded factual allegations and construe them in favor of the plaintiff unless disputed by documentary evidence submitted by the moving party." *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Proctor v Saginaw Bd of Comm'rs*, 340 Mich App 1, 10; 985 NW2d 193 (2022) (quotation marks and citation omitted).

A motion under MCR 2.116(C)(10) is properly granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law." *Houston*, 335 Mich App at 557 (quotation marks and citation omitted). "A trial

court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id*. (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court reviews "de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014). This Court also reviews de novo the question of whether a party has been afforded due process. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

## III. PROCEDURAL DUE PROCESS

Plaintiffs first argue that the trial court violated their right to procedural due process by dismissing their IIED and abuse-of-process claims without adequate notice to them or a meaningful opportunity to be heard. We disagree.

## 1. BELLEFANT'S IIED AND ABUSE-OF-PROCESS CLAIMS

Initially, we disagree with plaintiffs' assertion that defendants' motion for summary disposition did not seek actually dismissal of Bellefant's IIED and abuse-of-process claims. In particular, defendants' motion asserted that Bellefant's severance agreement included a comprehensive release of any claims arising from his employment and separation from it, which was effective to bar "all of the claims he brings in this lawsuit." Contrary to plaintiffs' argument, therefore, defendants' motion for summary disposition provided plaintiffs with notice that they were seeking dismissal of all of Bellefant's claims on the basis of the release, and plaintiffs had an opportunity to respond to this argument. "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki*, 286 Mich App at 485. "The basic requirements of due process in a civil case include notice of the proceedings and a meaningful opportunity to be heard." *Id.* Plaintiffs' due-process rights were satisfied by defendants' motion.

Plaintiffs also argue that defendants' motion did not adequately inform them that they were seeking dismissal of Bellefant's IIED and abuse-of-process claims under MCR 2.116(C)(10) specifically and, therefore, the trial court erred to the extent that it sua sponte ruled that dismissal of Bellefant's IIED and abuse-of-process claims were also subject to dismissal under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). "The level of specificity required under MCR 2.116(G)(4) is that which would place the nonmoving party on notice of the need to respond to the motion made under MCR 2.116(C)(10)." *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "If the moving party properly supports its motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.* at 370 (quotation marks and citation omitted). The opposing party may not rest upon mere allegations or denials in pleadings, but must, by affidavits or other documentary evidence, set forth specific facts showing that there is a genuine issue of material fact for trial. MCR 2.116(G)(4). However, "[i]f the moving

party fails to properly support its motion for summary disposition, the nonmoving party has no duty to respond and the trial court should deny the motion." *Barnard Mfg Co*, 285 Mich App at 370.

Defendants' motion requested summary disposition of Bellefant's claims under MCR 2.116(C)(7) on the basis of the release. It also sought dismissal of many of plaintiffs' other claims under MCR 2.116(C)(10), but they did not request dismissal of Bellefant's IIED and abuse-of-process claims under that subrule. Accordingly, when responding to defendants' motion, plaintiffs had no obligation to present evidence setting forth specific facts showing that there were genuine issues of material fact regarding Bellefant's IIED and abuse-of-process claims. Despite this, in addition to dismissing those claims under MCR 2.116(C)(7) on the basis of the release, the trial court also stated that the claims were subject to dismissal because they were "unsupported by any evidence."

Because plaintiffs had no obligation to present any evidence to establish a genuine issue of material fact regarding Bellefant's IIED and abuse-of-process claims, see *Barnard Mfg Co*, 285 Mich App at 370, it was improper for the trial court to dismiss those claims on the ground that plaintiffs failed to introduce evidence to establish factual support for them. However, this error was harmless. See MCR 2.613(A) ("An error . . . in a ruling or order . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."). As noted, the trial court concluded that Bellefant's claims were barred by the comprehensive release he signed as part of the severance agreement. Plaintiffs have not effectively or meaningfully challenged that ruling. Plaintiffs' brief contains a brief reference to Bellefant's release, notes that the scope of a release is governed by the intent of the parties, and then provides a definition of fraud from *Black's Law Dictionary* (5th ed) (defining fraud as "[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right"). Plaintiffs offer no additional argument to explain their legal position that the release was invalid because of fraud, or to identify any evidence factually supporting any claim that the release was obtained by fraud.

Plaintiff's cursory reference to the release is deficient for several reasons. First, "[i]ndependent issues not raised in the statement of questions presented are not properly presented for appellate review." *Maurer v Fremont Ins Co*, 325 Mich App 685, 699; 926 NW2d 848 (2018) (quotation marks and citation omitted). Second, "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *ER Drugs v Dep't of Health and Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022) (quotation marks and citation omitted). Likewise, a party may not leave it to this Court to search for a factual basis to sustain its position. *Id*. at 147. Similarly, "[a] party abandons a claim when it fails to make a meaningful argument in support of its position." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

In sum, plaintiffs have not properly raised any challenge to the trial court's dismissal of Bellefant's claims on the basis of the release, and their summary request that this Court "consider" the release, without offering any legal argument or factual support for their position that the release is invalid, is insufficient to demonstrate that the trial court erred by holding that Bellefant's claims

were barred by it. Accordingly, to the extent that the trial court erred by dismissing Bellefant's IIED and abuse-of-process claims for lack of factual support under MCR 2.116(C)(10), the error was harmless under MCR 2.613(A) because those claims were properly dismissed under MCR 2.116(C)(7) on the basis of the release.

## 2. CARREKER'S IIED CLAIM

Plaintiffs also argue that the trial court erred by sua sponte dismissing Carreker's IIED claim, in violation of their right to due process. We disagree.

Plaintiffs contend that defendants' motion did not adequately inform them that they were seeking dismissal of Carreker's IIED claim under MCR 2.116(C)(10) on the ground that there was no genuine issue of material fact regarding that claim and, therefore, the trial court erred to the extent that it sua sponte ruled that dismissal of Carreker's IIED claim was also subject to dismissal under MCR 2.116(C)(10). While plaintiffs are correct that defendants' motion for summary disposition did not specifically request dismissal of Carreker's IIED claim under MCR 2.116(C)(10), the motion did request dismissal of Carreker's abuse-of-process claim under MCR 2.116(C)(10), and the factual bases for Carreker's IIED and abuse-of-process claims were the same. Indeed, plaintiffs concede that "[b]oth claims arise out of Matrix's use of the PPO issued on April 5, 2017, for the improper purpose of terminating Plaintiffs' child from Matrix's Head Start program on April 24, 2017, in retaliation (ulterior purpose) against Carreker for filing complaints against two different Matrix employees, thereby, exposing Matrix to legal liability." In addition, plaintiffs' complaint sets forth that Carreker's IIED and abuse-of-process claims were both grounded on plaintiffs' allegations that defendants engaged in extreme and outrageous conduct and abused the judicial process by obtaining a PPO against Carreker for the ulterior purpose of excluding J. Doe from defendants' Head Start program.

As noted earlier, a motion for summary disposition under MCR 2.116(C)(10) "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). In their motion for summary disposition, defendants asserted that there was no genuine issue of material fact that the PPO was obtained by Horton, a nonparty, and that there was "no evidence that any of the Defendants directed or otherwise influenced Ms. Horton's decision to file the PPO and the Ex Parte Order granting it." Thus, plaintiffs had notice of the specific factual issue—which was the foundation for Carreker's IIED claim—for which defendants believed there was no genuine issue of material fact. Plaintiffs had the opportunity to respond to that issue, and did indeed respond by claiming that "the PPO transcript proves that defendant [Lewanda] Gipson required Horton to take out a PPO against Carreker." In its opinion and order granting summary disposition, in addition to dismissing Carreker's IIED claim under MCR 2.116(C)(7), the trial court stated:

> Carreker claims Matrix, by a PPO, prevented her child from attending the head start program, which is an abuse of process and intentional infliction of emotional distress. The PPO was issued by a court on application of Horton, not Matrix. These counts are unsupported in evidence[.]

In sum, the record discloses that the factual bases for Carreker's IIED and abuse-of-process claims were the same, and that plaintiffs had notice of and the opportunity to respond to the specific

factual issue for which defendants believed there was no genuine issue of material fact, and which necessarily would preclude recovery on both the IIED and the abuse-of-process claims. Furthermore, to the extent that plaintiffs believed it was improper to dismiss Carreker's IIED claim for lack of factual support, plaintiffs had the opportunity to further argue that issue in their motion for reconsideration. See *Al-Maliki*, 286 Mich App at 485-486 (stating that due process can be satisfied by affording a party an opportunity for rehearing). Notably, although plaintiffs argued in their motion for reconsideration that they did not have notice that defendants were seeking dismissal of Bellefant's IIED and abuse-of-process claims, they never argued that they did not have notice that defendants were seeking dismissal of Carreker's IIED claim. Instead, they continued to generally argue their position that the evidence established a genuine issue of material fact regarding Carreker's claims. For these reasons, we reject plaintiffs' claim that the trial court violated Carreker's right to due process by dismissing her IIED claim for lack of factual support and affirm the trial court's order granting summary disposition in favor of defendants.

## IV. STATUTE OF LIMITATIONS

Next, plaintiffs argue the trial court erred by ruling that Carreker's IIED and abuse-of-process claims were barred by the statute of limitations. Although we agree that these claims were not barred by the statute of limitations, as explained more fully in this opinion, Carreker's claims were properly dismissed under MCR 2.116(C)(10).

The parties do not dispute that Carreker's IIED and abuse-of-process claims were subject to the three-year limitations period in MCL 600.5805(2). MCL 600.5827 provides that the "period of limitations runs from the time the claim accrues[,]" which generally is "the time the wrong upon which the claim is based was done regardless of the time when damage results."

The parties dispute concerns when Carreker's IIED and abuse-of-process claims accrued. The trial court concluded that Carreker's claims accrued on April 5, 2017, when the PPO was issued. Defendants argue that Carreker's IIED and abuse-of-process claims accrued before April 5, 2017; however, it was the filing of the petition for the PPO and the issuance of it that constitutes the alleged wrong forming the basis for Carreker's IIED and abuse-of-process claims. Accordingly, we agree with the trial court that Carreker's IIED and abuse-of-process claims accrued on April 5, 2017. See MCL 600.5827. Although the trial court correctly observed that plaintiffs' complaint was filed more than three years later—on April 21, 2020—the trial court erred by failing to consider the effect of Administrative Order 2020-3 ("AO 2020-3"), which tolled the limitations period, effective March 23, 2020, as a result of the COVID-19 pandemic.

On March 23, 2020, the Michigan Supreme Court issued AO 2020-3, which stated, in pertinent part:

> In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:
>
> For all deadlines applicable to the commencement of all civil and probate casetypes, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading

-6-

or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).

This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19.

On June 20, 2020, the Supreme Court issued Administrative Order 2020-18, which rescinded AO-2020-3, effective June 20, 2020.

Under the applicable three-year limitations period, because Carreker's IIED and abuse-of-process claims accrued on April 5, 2017, she ordinarily would have had until April 5, 2020, to timely file her claims. However, AO 2020-3 tolled the limitations period effective March 23, 2020, before the three-year period expired. Plaintiffs filed their complaint on April 21, 2020, before AO 2020-3 was rescinded and while the limitations period was still tolled. Accordingly, because AO 2020-3 tolled the applicable three-year limitations period effective March 23, 2020, before the period expired, and because plaintiffs filed this action on April 21, 2020, before the limitations period resumed running, the trial court erred by dismissing Carreker's IIED and abuse-of-process claims on the basis of the statute of limitations. See *Carter v DNT Mgt Co*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 360772), slip op at 4, lv gtd ___ Mich ___; 991 NW2d 586 (2023) ("[U]nder AO 2020-3 and MCR 1.108(1), any day falling during the state of emergency does not count toward determining the last day of a statutory limitations period.").

Again, however, this error was harmless because the trial court also dismissed Carreker's IIED and abuse-of-process claims for lack of factual support. Plaintiffs have not challenged the trial court's conclusion that Carreker's IIED claim lacked factual support other than by arguing that the court violated Carreker's right to due process by dismissing her IIED claim on that basis. As explained in Part III, the trial court's dismissal of the IIED claim for lack of factual support did not violate Carreker's right to due process. Furthermore, as will be explained in Part V, the trial court did not err when it granted summary disposition of Carreker's abuse-of-process claim under MCR 2.116(C)(10). Accordingly, because both claims were properly dismissed on other grounds, the court's error in relying on the statute of limitations was harmless. See MCR 2.613(A).

## V. CARREKER'S ABUSE-OF-PROCESS CLAIM

Plaintiffs argue that the trial court erred when it granted summary disposition of Carreker's abuse-of-process claim under MCR 2.116(C)(10). We disagree.

Abuse of process is "the wrongful use of the process of a court." *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016) (quotation marks and citation omitted). The action is grounded in "the improper use of process after it has been issued, not for maliciously causing it to issue." *Id*. (quotation marks and citation omitted) "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Id*. at 211-212 (quotation marks and citation omitted). The act at issue must be something more than the mere initiation of a lawsuit, "and the ulterior purpose has to be something other than settling a suit." *Id.* at 212.

Plaintiffs contend it was error for the trial court to dismiss Carreker's abuse-of-process claim because there were genuine issues of material fact regarding whether Matrix used the PPO process to retaliate against Carreker for filing the sexual harassment complaint against a Matrix employee and used the PPO to terminate her child from participation in the Head Start program. The trial court determined that plaintiffs failed to present factual support for their contention that any defendant was involved in obtaining the PPO, and further found that the evidence did not support a finding that the PPO was the reason Carreker's child was not allowed to return to the Head Start program.

It is undisputed that the PPO was obtained by Horton, a nonparty to this action. Although Horton's petition for the PPO was based on an altercation with Carreker at a Matrix facility, during which Horton was allegedly threatened by Carreker, Horton explained in her deposition that she sought the PPO on her own, for her personal safety, and was not forced to do so by anyone at Matrix. She explained that Matrix's only involvement was that it allowed her to leave work so she could file the necessary papers. Gipson also denied telling Horton to obtain a PPO against Carreker.

Plaintiffs argue that Horton's testimony at the hearing on Carreker's motion to terminate the PPO establishes that Horton was directed by Gipson to obtain the PPO. Plaintiffs rely on the testimony by Horton in which she stated during the hearing for the PPO that "the job sent me down here." Viewed in a light most favorable to plaintiffs, Horton's testimony could be viewed as showing that she was advised by her employer, Matrix, to seek a PPO, but it does not establish a genuine issue of material fact for trial whether the PPO was sought for an improper or ulterior purpose attributable to Matrix or any individual defendant, or whether any of the allegations in the petition for the PPO were false. Indeed, the court's remarks at the PPO hearing indicate that it believed there was a factual basis for continuing the PPO and agreed to dismiss it only after Horton told the court she did not feel threatened.

Furthermore, there is no evidence that the PPO prevented J. Doe from attending the Head Start program. Nothing in the language of the PPO prevented him from attending the program, and the case notes from the Head Start program state that Carreker was told her child could continue to attend the Head Start program but that Carreker was not allowed to bring the child to or from the school. Other evidence showed that the child was removed from the program after lawyers became involved in the situation related to Bellefant's separation of employment from Matrix.[1]

---

[1] Although plaintiffs also cite the deposition testimony of Andrea Brown in support of their claim that Gipson instructed Horton to obtain the PPO, the record does not indicate that plaintiffs presented Brown's deposition testimony to the trial court. Because this Court's review is limited to the record presented in the trial court and enlargement of the record on appeal is not permitted, we decline to consider Brown's deposition testimony. See *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 165; 761 NW2d 784 (2008) ("This Court's review is limited to the record of the trial court.").

In sum, Carreker's abuse-of-process claim was predicated on the issuance of the PPO, which was obtained by Horton, a nonparty, following an altercation in which Carreker allegedly threatened Horton at a Matrix facility. Even assuming that the evidence supported a finding that Gipson advised Horton to seek the PPO, plaintiffs failed to establish a genuine issue of material fact that the PPO was sought for an improper or ulterior purpose or was based on false allegations, or that the removal of Carreker's child from defendants' Head Start program was related to the issuance of the PPO. Accordingly, the trial court did not err when it granted summary disposition in defendants' favor.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly