AMERICAN TRANSMISSION, INC v CHANNEL 7 OF DETROIT, INC

Docket No. 210925. Submitted October 7, 1999, at Detroit. Decided February 22, 2000, at 9:10 A.M.

American Transmission, Inc., and American Transmissions of Troy brought an action in the Oakland Circuit Court against Channel 7 of Detroit, Inc., and Joe Ducey, alleging claims of defamation, fraud, trespass, and intentional interference with prospective business relationships. The action was based on the defendants' broadcast on television of an investigation they conducted regarding consumers' experiences at transmission repair facilities, including American Transmissions of Troy. The court, Jessica R. Cooper, J., granted summary disposition in favor of the defendants. The plaintiffs appealed.

The Court of Appeals *held*:

1. The court properly granted summary disposition in favor of the defendants. The plaintiffs' clam that the entire broadcast was defamatory because of its alleged implication that the plaintiffs were dishonest could succeed only if the plaintiffs proved that the defamatory implications were materially false. The plaintiffs failed to raise a genuine issue of fact regarding whether any implications raised by the defendants' broadcast were false.

2. Although the defendants' agent misrepresented her purpose in gaining consent to enter the plaintiffs' premises, the consent was still a valid affirmative defense to the claim of trespass because the agent did not invade any of the specific interests relating to the peaceable possession of land that the tort of trespass seeks to protect.

3. The court did not abuse its discretion in denying the plaintiffs' motion for reconsideration.

Affirmed.

1. LIBEL AND SLANDER — ACTIONS — BURDEN OF PROOF — MEDIA DEFENDANTS — PRIVATE PLAINTIFFS.

A plaintiff in a defamation action involving a private plaintiff, a media defendant, and a publication regarding an area of public concern bears the burden of proving the falsity of the defamatory communication and establishing that the defendant's publication of the communication was negligent.

2. LIBEL AND SLANDER — DEFAMATION BY IMPLICATION — BURDEN OF PROOF.

   A cause of action for defamation by implication exists in Michigan; a plaintiff alleging defamation by implication must prove that the defamatory implication is materially false.

3. TRESPASS — CONSENT TO ENTER PROPERTY — MISREPRESENTATIONS.

   Trespass is an unauthorized invasion upon the private property of another; consent is an affirmative defense to a claim of trespass; consent to enter property that is obtained as a result of misrepresentation to the landowner is still valid consent where the entry does not invade any of the specific interests relating to the peaceable possession of land that the tort of trespass seeks to protect.

*Martin E. Crandall & Associates, P.C.* (by *Martin E. Crandall*), for the plaintiffs.

*Butzel Long* (by *James E. Stewart, Eugene H. Boyle, Jr.,* and *Laurie J. Michelson*) (*Baker & Hostetler,* by *Bruce W. Sanford* and *David M. Giles,* of Counsel), for the defendants.

Before: WILDER, P.J., and BANDSTRA and CAVANAGH, JJ.

CAVANAGH, J. Plaintiffs American Transmission, Inc., and American Transmissions of Troy appeal as of right from the trial court order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) with regard to plaintiffs' claims of defamation, fraud, trespass, and intentional interference with prospective business relationships. We affirm.

In 1996, Call for Action, a consumer advocacy group, informed defendant Joe Ducey, the consumer reporter for defendant Channel 7 of Detroit, Inc., that it had been receiving a disproportionately high number of consumer complaints about transmission repair shops. Ducey decided to do a story on a consumer's experiences at transmission repair facilities. Defendants rented a 1986 Buick LaSabre, which

Ducey took to a certified mechanic, Morrie Schwartz. Schwartz performed a road test and a visual inspection under the hood and concluded that the vehicle was operating properly and that there were no transmission problems. For the purpose of defendants' investigation, Schwartz suggested disconnecting the vehicle's vacuum hose from the transmission. When Schwartz did so, the car became much more difficult to shift and made a "clunking noise" when it stopped. Schwartz explained that, given these problems, the vacuum line was one of the first things that should be checked.

Over the course of two days, Evelyn Stern, a volunteer at Call for Action, took the vehicle to eight randomly chosen transmission repair facilities. Ducey followed in a van. After a particular transmission shop was selected, they would stop approximately a block away, and Ducey would disconnect the vacuum hose. Stern then drove to the shop, where she would pose as a customer. Before they proceeded to the next establishment, Ducey would reattach the hose because the vehicle was too difficult to drive when the hose was not connected.

At each facility, Stern, who was equipped with a hidden camera, would explain that she was having difficulty with her transmission. Four of the shops that Stern visited found the detached vacuum hose and reconnected it for no charge. The other four shops did not diagnose the problem with the vacuum hose and recommended taking apart the transmission for a minimum cost of several hundred dollars.

Stern visited American Transmissions of Troy (hereafter plaintiff) on December 11, 1996. After performing a road test and hoist inspection, plaintiff's

manager told Stern that there were "a lot of different things here," and the problems could "not [be] solved with a minor adjustment." Plaintiff's manager stated that he needed to do an internal inspection, which would involve disassembling the transmission to "see what parts are failing, cut the cancer out basically before it spreads even further." The cost of the internal inspection would be $249; there would be additional charges for parts and labor for any items that needed to be replaced. Stern said that she would have to discuss the situation with her husband and left the shop.

On January 2, 1997, Ducey and a camera operator went to plaintiff's shop. Ducey introduced himself to Barry Bryan, the owner of the shop, and showed him the videotape of Stern's earlier visit. Ducey noted that, although a hoist inspection had been performed, the "vacuum" box was not checked on the inspection form that plaintiff's manager had given Stern. Bryan was unable to account for this omission or for his shop's failure to find the disconnected hose.

Channel 7 aired its broadcast of the transmission shop investigation on February 15, 1997, and again on February 16, 1997. The piece began with an introduction by news anchor Mike Holfeld:

> They are words you don't want to hear, your car has serious problems. It's the transmission. It could cost more than $1,000, but a Newshawk investigation shows some people they might be paying for repairs they don't even need. Channel 7 Newshawk Joe Ducey here now with more.

The segment included interviews with consumers who believed that they had been duped into paying for unnecessary work on their vehicles' transmis-

sions. Ducey then explained that Stern had visited various transmission shops, and portions of her encounters with the four shops that had recommended expensive repairs, including American Transmissions of Troy, were shown. The segment also showed part of Ducey's interview with Bryan, and Ducey noted that Bryan stood by his shop's diagnosis. Ducey further reported, "American on Rochester Road in Troy says if the vacuum hose was pulled they would have found it." At the end of the segment, after Ducey listed the four shops that had detected the problem with the hose and reattached it without charge, Holfeld noted that there are "[s]ome honest guys still out there."

Following the broadcast, American Transmissions of Troy demanded a retraction. Counsel for Channel 7 requested that it identify which statements in the broadcast were false. Instead of responding, plaintiffs[1] filed the instant lawsuit on March 19, 1997, alleging defamation, fraud, trespass, and intentional interference with prospective business relationships. Specifically, plaintiffs claimed that (1) defendants defamed plaintiffs by wilfully and maliciously publishing false statements, (2) defendants made false statements and misrepresentations regarding the condition of the vehicle, (3) Stern, under defendants' direction, materially misrepresented her relationship to the vehicle and to defendants, (4) defendants were trespassers on American Transmissions of Troy's premises because they gained entry by concealing their true identity and misrepresenting their agent's rela-

---

[1] Plaintiff American Transmission, Inc., is the franchisor of plaintiff American Transmissions of Troy.

tionship to them, and (5) defendants' intentional conduct interfered with plaintiffs' valid business expectancies and caused a loss of customers, business, and profits.

On November 5, 1997, defendants moved for summary disposition pursuant to MCR 2.116(C)(10). To their brief in opposition to defendants' motion, plaintiffs attached a videotape of an inspection of the Buick's transmission by mechanic Joe Dunn on February 2, 1997. In addition, plaintiffs attached a report by Wayne Bullen describing his observation of Dunn's examination. According to the report, Dunn noted "chattering and clattering" when the transmission was placed in reverse and discovered multiple defects in the transmission.

The trial court advised the parties that it would not entertain oral argument regarding defendants' motion for summary disposition. On January 29, 1998, plaintiffs filed a motion requesting oral argument. Plaintiffs argued that, because of the complexity and technical nature of the case, oral argument would assist the court in ruling on defendants' motion. The record does not contain an order addressing plaintiffs' motion; however, on February 23, 1998, the trial court issued an opinion and order granting defendants' motion for summary disposition and noting that the motion had been decided without oral argument.

In its opinion, the trial court stated that the Dunn videotape failed to satisfy MCR 2.116(G)(4), which provides that when a motion is brought pursuant to MCR 2.116(C)(10) and supported, an adverse party may not rest on mere allegations but must by affidavits or otherwise set forth specific facts showing that there is a genuine issue for trial. The court noted that

Dunn had not been duly sworn and did not state that if called to testify, he would do so in accordance with his findings.[2] Likewise, Bullen's report was deficient because it was premised on hearsay and was not in the form of an affidavit or deposition testimony. Plaintiffs subsequently moved for reconsideration; they attached to their motion both the March 9, 1998, affidavit of Dunn and additional pages from the transcript of Schwartz' deposition.[3] The trial court denied the motion.

I

Plaintiffs argue that the trial court erred in granting defendants' motion for summary disposition. On appeal, an order granting or denying summary disposition is reviewed de novo. In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the evidence shows that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

---

[2] The trial court also noted that Dunn's videotaped examination of the transmission ran for more than two hours and was frequently inaudible.

[3] In the additional pages of the deposition transcript, Schwartz testified that he had not taken apart a transmission in twelve or fifteen years, and his shop did not do transmission work.

### A. DEFAMATION CLAIM

A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him. *Hawkins v Mercy Health Services, Inc*, 230 Mich App 315, 324; 583 NW2d 725 (1998). The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *Ireland v Edwards*, 230 Mich App 607, 614; 584 NW2d 632 (1998). In a case involving a private plaintiff, a media defendant, and a publication regarding an area of public concern, the plaintiff bears the burden of proving falsity and of establishing that the defendant's publication of the communication at issue was negligent. *Rouch v Enquirer & News of Battle Creek (After Remand)*, 440 Mich 238, 252; 487 NW2d 205 (1992).

On appeal, plaintiffs do not argue that any of the statements made during the broadcast were literally untrue. Rather, plaintiffs claim that the entire broadcast was defamatory because of its implication that plaintiffs were dishonest. A cause of action for defamation by implication exists in Michigan, but can succeed only if the plaintiff proves that the defamatory implications are materially false. *Hawkins, supra* at 330.

In the present case, the trial court did not err in granting defendants' motion for summary disposition

of the defamation claim because plaintiffs failed to carry their burden of providing evidence to establish the falsity of the implications at issue. See *id.* The purpose of defendants' investigation was to determine whether randomly selected transmission shops would find that the immediate cause of the problems reported by Stern—difficulty in shifting and jerky stops—was a disconnected vacuum hose. Schwartz testified that, given the reported problems, the vacuum line was one of the first things that should be checked. Four transmission shops did identify the disconnected hose as the cause of the problems and reconnected it without charge. Plaintiff American Transmissions of Troy, however, failed to diagnose and correct the displaced hose, and its employee told Stern that the transmission would have to be disassembled.[4] Defendants reported these facts. The implication raised by defendants' broadcast was that American Transmissions of Troy attempted to deceive a supposed customer into paying for unnecessary repairs.[5] However, plaintiffs have failed to provide any evidence whatsoever, such as the testimony of the employee who examined the vehicle and recommended taking apart the transmission, that would raise a genuine issue of material fact regarding the falsity of the implication that American Transmissions of Troy had been dishonest. See *id.*

---

[4] Although plaintiffs repeatedly refer to the "allegedly disconnected" vacuum hose, plaintiffs have presented no evidence to contradict Ducey's testimony that he disconnected the vacuum hose before the vehicle was brought to American Transmissions of Troy. Perhaps significantly, the "vacuum" box was not checked on American Transmissions of Troy's inspection form.

[5] An alternative implication is that plaintiffs were incompetent; however, plaintiffs confine themselves to arguing that the broadcast made it appear that they were dishonest.

Plaintiffs contend that the trial court erred in failing to consider both the videotape of Dunn's inspection of the vehicle's transmission and Bullen's report. However, we need not address whether the trial court erred in refusing to consider these items because they are not relevant to the pivotal issue, that is, whether plaintiffs had demonstrated the existence of a genuine issue of fact regarding the falsity of the implications at issue. Even if the Buick's transmission did have some internal defects, both Ducey and Stern testified that the symptoms described to American Transmissions of Troy's manager were present *only* when the vacuum hose was disconnected. Defendants presented evidence, which plaintiffs have not disputed, that the disconnected vacuum hose was both an obvious source of the reported problems and easily detectable. Accordingly, the fact that Dunn discovered internal problems with the transmission on February 2, 1997, was not relevant to American Transmissions of Troy's failure to find the disconnected vacuum hose on December 11, 1996.

The purpose of defendants' investigation—as clearly stated in the broadcast—was to discover whether the transmission shops visited by Stern would find the disconnected vacuum hose or recommend expensive repairs. As defendants reported, American Transmissions of Troy did not detect the problem with the hose and told Stern that it would be necessary to disassemble the transmission for an initial cost of $249. Plaintiffs have not sustained their burden of presenting evidence that raises a genuine issue of fact regarding whether any implications raised by defendants' broadcast were false. See *id.* Accordingly, the trial court properly granted defend-

ants' motion for summary disposition of plaintiffs' defamation claim.

### B. FRAUD AND TORTIOUS INTERFERENCE CLAIMS

Plaintiffs also maintain that the trial court erred in granting summary disposition of their claims of fraud and tortious interference with prospective business relationships. However, plaintiffs do not argue the merits of the trial court's decision or provide any argument that summary disposition was improperly granted. Accordingly, these claims have been waived on appeal. A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. *In re Webb H Coe Marital & Residuary Trusts*, 233 Mich App 525, 537; 593 NW2d 190 (1999).

### C. TRESPASS CLAIM

In addition, plaintiffs contend that the trial court erred in granting summary disposition of their trespass claim. It is undisputed that Stern was given consent to enter plaintiffs' premises. However, plaintiffs assert that consent was procured by Stern's misrepresentations regarding her identity, her relationship to defendants, and her purpose for being on the premises. Accordingly, plaintiffs maintain that Stern's entry onto the premises was unauthorized, and the trial court therefore erred in granting summary disposition of their trespass claim. This is an issue of first impression in Michigan.

A trespass is an unauthorized invasion upon the private property of another. *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995). Thus, consent is an affirmative defense to

a claim of trespass. *Weisswasser v Chernick*, 68 Mich App 342, 345; 242 NW2d 576 (1976); see also 1 Restatement Torts, 2d, § 167, p 309  (consent is an absolute defense to trespass).

In *JH Desnick, MD v American Broadcasting Cos, Inc*, 44 F3d 1345 (CA 7, 1995),  the Seventh Circuit Court of Appeals addressed the question whether a landowner's consent to enter his property is void when the consent is obtained by misrepresentations. In *Desnick*, agents of the ABC television show *Prime-Time Live* were equipped with concealed cameras and sent to various offices of the Desnick Eye Center. *PrimeTime Live* subsequently aired excerpts of the videotape obtained, which showed several doctors telling four of the test patients that they needed cataract surgery, accompanied by an interview with a professor of ophthalmology who emphatically stated that the four did not need surgery. *Id.* at 1348.

In discussing whether the defendants committed a trespass by insinuating their agents into the plaintiffs' offices, the Seventh Circuit Court of Appeals stated:

> [T]here is no journalists' privilege to trespass. . . . And there can be no implied consent in any nonfictitious sense of the term when express consent is procured by a misrepresentation or a misleading omission. The Desnick Eye Center would not have agreed to the entry of the test patients into its offices had it known they wanted eye examinations only in order to gather material for a television exposé of the Center and that they were going to make secret videotapes of the examinations. Yet some cases . . . deem consent effective even though it was procured by fraud. . . . Without [this result] a restaurant critic could not conceal his identity when he ordered a meal, or a browser pretend to be interested in merchandise that he could not afford to buy. . . . The fact is that consent to an entry is often given legal effect even though the entrant has inten-

tions that if known to the owner of the property would cause him for perfectly understandable and generally ethical or at least lawful reasons to revoke his consent. [*Id.* at 1351.]

Ultimately, the court held that the use of test patients with concealed cameras did not support an action for trespass. The court explained:

There was no invasion in the present case of any of the specific interests that the tort of trespass seeks to protect. The test patients entered offices that were open to anyone expressing a desire for ophthalmic services and videotaped physicians engaged in professional, not personal, communications with strangers (the testers themselves). The activities of the offices were not disrupted . . . . Nor was there any inva[sion of] a person's private space, . . . as in the famous case of *De May v Roberts*, 46 Mich 160; 9 NW 146 (1881) (where a doctor, called to the plaintiff's home to deliver her baby, brought along with him a friend who was curious to see a birth but was not a medical doctor, and represented the friend to be his medical assistant) . . . .

No embarrassingly intimate details of anybody's life were publicized in the present case. There was no eavesdropping on a private conversation; the testers recorded their own conversations with the Desnick Eye Center's physicians. There was no violation of the doctor-patient privilege. There was no theft, or intent to steal, trade secrets; no disruption of decorum, of peace and quiet; no noisy or distracting demonstrations. . . . "Testers" who pose as prospective home buyers in order to gather evidence of housing discrimination are not trespassers even if they are private persons not acting under color of law. . . . The situation of the defendants' "testers" is analogous. Like testers seeking evidence of violation of anti-discrimination laws, the defendants' test patients gained entry into the plaintiffs' premises by misrepresenting their purposes (more precisely by a misleading omission to disclose those purposes). But the entry was not invasive in the sense of infringing the kind of interest of the plaintiffs that the law of trespass pro-

tects; it was not an interference with the ownership or possession of land. [*Id.* at 1352-1353 (some internal quotation marks omitted).]

Plaintiffs rely on *Food Lion, Inc v Capital Cities/ABC, Inc*, 951 F Supp 1217 (MD NC, 1996) (*Food Lion I*). However, the Fourth Circuit Court of Appeals, relying on *Desnick*, has recently held that a finding of trespass cannot be sustained on grounds of misrepresentation. See *Food Lion, Inc v Capital Cities/ABC, Inc*, 194 F3d 505, 517-518 (CA 4, 1999) (*Food Lion II*).[6]

We likewise find *Desnick* persuasive and adopt its reasoning.[7] Accordingly, we conclude that the trial court properly granted summary disposition of plaintiffs' trespass claim. Although Stern misrepresented her purpose, plaintiffs' consent was still valid because she did not invade any of the specific interests relating to the peaceable possession of land that the tort of trespass seeks to protect. Cf. *id.* at 518; *Desnick, supra* at 1352. Stern entered only those areas of

---

[6] Nevertheless, the jury's trespass verdict was sustained because the reporters who infiltrated the plaintiff's premises by becoming employees breached their duty of loyalty to the plaintiff by pursuing their investigation for ABC. *Food Lion II, supra* at 518.

[7] See also *Baugh v CBS, Inc*, 828 F Supp 745, 757 (ND Cal, 1993) ("In a case where consent was fraudulently induced, but consent was nonetheless given, plaintiff has no claim for trespass."); *Martin v Fidelity & Casualty Co of New York*, 421 So 2d 109, 111 (Ala, 1982) (" '[A]n action for trespass . . . will not lie unless plaintiff's possession was intruded upon by defendant without his consent, even though consent may have been given under a mistake of facts, or procured by fraud . . . .' ") (citation omitted). But see *Medical Laboratory Management Consultants v American Broadcasting Cos, Inc*, 30 F Supp 2d 1182, 1203 (D Ariz, 1998) ("[T]he conclusions reached in *Desnick* are not supported by the law in Arizona or the Ninth Circuit."); 4 Restatement Torts, 2d, § 892B(2), p 370 ("If the person consenting to the conduct of another is induced to consent by . . . the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.").

plaintiffs' shop that were open to anyone seeking transmission repair services and videotaped plaintiffs' employee engaging in a professional discussion with her. Stern did not disrupt the shop or invade anyone's private space, and the videotape she made did not reveal the intimate details of anybody's life. See *Food Lion II, supra; Desnick, supra* at 1352-1353.

II

Plaintiffs next argue that the trial court erred in denying their request for oral argument with regard to defendants' motion for summary disposition. However, MCR 2.119(E)(3) specifically authorizes the court, in its discretion, to dispense with or limit oral arguments with regard to motions. We review such a decision for an abuse of discretion. *Fast Air, Inc v Knight*, 235 Mich App 541, 550; 599 NW2d 489 (1999). Because, as the trial court noted, the parties had thoroughly briefed the issues, we cannot find that the court abused its discretion in dispensing with oral argument. See *id.*

III

Finally, plaintiffs claim that the trial court erred in denying their motion for reconsideration. This Court reviews a trial court's decision to deny a motion for reconsideration for an abuse of discretion. *In re Beglinger Trust*, 221 Mich App 273, 279; 561 NW2d 130 (1997).

Plaintiffs have not shown that the trial court made a palpable error or that a different disposition of defendants' motion for summary disposition would result from correction of the error. See MCR 2.119(F)(3). With regard to plaintiffs' complaint that

the trial court refused to consider the affidavit of Joe Dunn and a portion of Schwartz' deposition transcript, plaintiffs do not argue that the affidavit and deposition testimony could not have been presented to the trial court before its original order of dismissal. See *Charbeneau v Wayne Co General Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987). Moreover, neither the affidavit nor the deposition testimony contains evidence regarding plaintiffs' burden of proving that the defamatory implications in defendants' broadcast are materially false. See *Hawkins, supra*. Accordingly, we conclude that the trial court did not abuse its discretion in denying plaintiffs' motion for reconsideration.[8]

Affirmed.

---

[8] Plaintiffs additionally argue that the trial court's denial of their motion for reconsideration was an abuse of discretion because the court "disregarded" the affidavit of Gordon Kasza. However, plaintiffs attached the affidavit to a supplement to the motion for reconsideration that was filed on March 25, 1998, *after* the entry of the trial court's order denying the motion for reconsideration.