*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS HAAN, CONNIE HAAN, KRISTIN BROOKS, and JILL RHODES,

Plaintiffs/Counterdefendants-
Appellants,

and

WILLIAM RHODES, CASEY ALLEN, LAURA ALLEN, TRAVIS STEPHENSON, MARCIANN STEPHENSON, KEVIN MARCY, and SUSAN MARCY,

Plaintiffs/Counterdefendants,

v

LAKE DOSTER LAKE ASSOCIATION,

Defendant/Counterplaintiff-
Appellee.

UNPUBLISHED
January 16, 2020

No. 345282
Allegan Circuit Court
LC No. 17-057955-CH

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

MURRAY, C.J., (*dissenting*).

I respectfully dissent from the majority's conclusion to reverse the trial court's order granting defendant's motion for summary disposition. As explained below, although the membership application is enforceable as a contract, the enforceability of the membership application does not have any bearing on whether the application established or affirmed plaintiffs' dock rights. Instead, any ability to place or utilize a dock on Lake Doster was subject to the rules and regulations of the Lake Doster Lake Association (LDLA). Consequently, and despite the peculiar procedural handling of the motions, I would affirm.

"Erecting or maintaining a dock near the water's edge is a riparian or littoral right." *Dyball v Lennox*, 260 Mich App 698, 705; 680 NW2d 522 (2004).[1]  A riparian owner owns land abutting a river, and riparian rights are the riparian owner's rights to make use of water in the waterway adjoining his or her property. *Little v Kin (Little I)*, 249 Mich App 502, 504 n 2; 644 NW2d 375 (2002), aff'd 468 Mich 699 (2003).  Reservation of a right-of-way for access to a waterway does not give rise to riparian rights, but only a right-of-way. *Thompson v Enz*, 379 Mich 667, 685; 154 NW2d 473 (1967).  Rights of nonriparian lot owners with access to a waterbody generally include the use of the surface of the water in a reasonable manner for activities such as boating, fishing, swimming, and temporarily anchoring boats. *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985).  Although "Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian," *Dyball*, 260 Mich App at 706, such as the right to erect and maintain docks and permanently moor boats, the grant must be within the scope of the easement, *Thies*, 424 Mich at 293, 295.

The plain language of the easement granted plaintiffs a right-of-way to access Lake Doster and use the surface of Lake Doster for reasonable lake and water activities.  However, the easement did not grant them the right to erect and maintain docks.  Instead, the subdivision plat provided that the Parkway was dedicated to plaintiffs' use, and the subdivision restrictions provided that no dock or boat shelter could be erected without LDLA's approval.  The subdivision restrictions also provided that LDLA had the right to control and regulate the usage of Lake Doster.

The plain language of the easement created in the plat and further described in the restrictions indicated that plaintiffs' right-of-way was limited to use of the Parkway and Lake Doster.  The developer retained riparian rights, and specifically provided that lakefront property owners did not have riparian rights.  These riparian rights were conveyed to LDLA when LDLA was established.  Neither the developer nor LDLA ever conveyed to plaintiffs the riparian right to install and maintain docks, and the scope of the easement did not include the right to install and maintain docks.  See *Thies*, 424 Mich at 295.  Further, LDLA retained the right to control the usage and enjoyment of Lake Doster, which includes the right to control docks on the waters of the lake.  Although the subdivision restrictions established a procedure for lot owners to install docks, this provision created a *mechanism* for property owners to obtain permission to erect a dock, but did not create a *property interest or legal right* to indefinitely keep and maintain a dock.

Because the language of the easement was limited to the use of the Parkway and Lake Doster, the easement granted plaintiffs a right-of-way of access to Lake Doster, but did not give

---

[1] Technically, land which abuts a lake is defined as "littoral," while the term "riparian" refers to land abutting a river. *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).  Nevertheless, the term "riparian" is often used in reference to lakefront property. See *id*. The trial court used the term "riparian" to refer to plaintiffs' rights, seemingly for convenience rather than legal reasons, for the LDLA owned the lake bottom up to the high-water mark.

rise to the riparian right to erect and maintain docks. See *Dyball*, 260 Mich App at 706. The membership application was consistent with this arrangement, as plaintiffs' retention of their past permitted rights under their membership applications was conditioned on their abiding by the subdivision plat and restrictions, and LDLA's bylaws, rules, and regulations. This included LDLA's authority to oversee and regulate the use and access to Lake Doster for the benefit of all property owners.

As a result of the foregoing, I would hold that plaintiffs' use and maintenance of their docks was subject to LDLA's oversight and regulation, and was not a permanent, irrevocable, and legal right. Because the plain language of the easement did not grant plaintiffs' dock rights, the trial court did not err by determining that there was no genuine issue regarding any material fact, and that LDLA was entitled to judgment as a matter of law. The trial court properly granted LDLA's motion for summary disposition. See *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012) (providing the standard of review for summary disposition under MCR 2.116(C)(10)).

The additional arguments posited by plaintiffs do not warrant disturbing the trial court's order. In particular, plaintiffs argue that the trial court erroneously failed to consider extrinsic evidence regarding the meaning of "past permitted rights" in their membership applications. If the language of an easement is unambiguous, a trial court is prohibited from considering extrinsic evidence of the intended scope of the easement. *Blackhawk Dev Corp v Dexter*, 473 Mich 33, 48-49; 700 NW2d 364 (2005). As this Court explained:

> This Court in *Little I, supra* at 511-512, indicated that the rights of nonriparian owners should be determined by examining the language of the easement and the circumstances existing at the time of the grant. In *Little v Kin*, 468 Mich 699; 664 NW2d 749 (2003) (*Little II*), our Supreme Court affirmed *Little I, supra*, but noted that, when the language of the easement grant is plain and unambiguous, a directive to consider circumstances existing at the time of the grant was inconsistent with well-established principles of legal interpretation. *Little II, supra* at 700 n 2. The Supreme Court provided that "[w]here the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Id.* at 700, citing *Gawrylak v Cowie*, 350 Mich 679, 683; 86 NW2d 809 (1957). In addition, our Supreme Court provided "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Little II, supra*. [*Dyball*, 260 Mich App at 703-704].

A trial court errs when it considers extrinsic evidence, including evidence of surrounding circumstances existing at the time of the grant, when the language of the easement is unambiguous. *Dyball*, 260 Mich App at 704.

The easement language in the subdivision plat and restrictions was not ambiguous. As discussed above, the plat established that plaintiffs had the right to use the Parkway, which in turn grants the right to access Lake Doster, and use Lake Doster for activities, including boating, fishing, swimming, and temporarily mooring boats. See *Thies*, 424 Mich at 288. However, the right to permanently anchor and moor boats is generally reserved for riparian lot owners, and the

plat and restrictions did not grant plaintiffs the right to install and maintain either temporary or permanent docks. See *Dyball*, 260 Mich App at 706. Although the restrictions provided a procedure for plaintiffs to obtain permission to construct a dock, this permission did not give rise to a right to install permanent, individual docks, but rather specified how their right-of-way to access Lake Doster can be exercised. See *id*. The membership application did not expand or establish plaintiffs' dock rights as "past permitted rights," but permitted plaintiffs to retain their rights to access and use Lake Doster. Further, the plat and restrictions provided that Lake Doster and plaintiffs' use of Lake Doster were subject to LDLA's control. Because the easement language was not ambiguous, the trial court did not err when it decided the parties' motions for summary disposition without considering extrinsic evidence of the easement grantor's intent. See *id*.

Plaintiffs also argue that the trial court erroneously granted LDLA's motion for summary disposition without a hearing on the basis of the parties' initial filings, and failed to allow plaintiffs the opportunity to respond to LDLA's motion. This Court reviews de novo questions regarding the interpretation and application of court rules. *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

This Court interprets court rules according to the same rules applicable to statutory interpretation. *Lamkin v Engram*, 295 Mich App 701, 707; 815 NW2d 793 (2012). The guiding principle of interpretation is to give effect to the intent of the authors–the Supreme Court. *Wilcoxon v Wayne Co Neighborhood Legal Servs*, 252 Mich App 549, 553; 652 NW2d 851 (2002). "The starting point to this endeavor is the language of the court rule." *Id*. Court rule language is given its plain meaning. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011). When that language is clear and unambiguous, the rule is enforced as written without further judicial construction or interpretation. See *Wilcoxon*, 252 Mich App at 553.

A party must file and serve a response to a motion for summary disposition, including a brief and any affidavits, at least seven days before the hearing on the motion. MCR 2.116(G)(1)(a)(*ii*). In order to properly support a motion for summary disposition, a moving party must identify the issues about which there is no genuine issue of material fact, and present evidence that, if left unrebutted, would establish the moving party's right to summary disposition. See MCR 2.116(G)(3). Once the moving party has presented sufficient evidence to support the grounds asserted in the motion, "the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009). MCR 2.116(G)(4) provides, in relevant part:

> When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

MCR 2.116(G)(4) does not require a nonmoving party to respond to the moving party's motion for summary disposition. However, failure to do so could result in judgment entered in favor of the moving party. See *Innovative Adult Foster Care*, 285 Mich App at 475. Additionally, MCR

2.116(G)(1) provides that "[e]xcept as otherwise provided in this subrule, MCR 2.119 applies to motions brought under this rule."

Regarding a motion hearing, MCR 2.119(E) provides:

> (1) Contested motions should be noticed for hearing at the time designated by the court for the hearing of motions. A motion will be heard on the day for which it is noticed, unless the court otherwise directs. If a motion cannot be heard on the day it is noticed, the court may schedule a new hearing date or the moving party may renotice the hearing.
>
> * * *
>
> (3) A court may, in its discretion, dispense with or limit oral arguments on motions, and may require the parties to file briefs in support of and in opposition to a motion.

There is no evidence or support in the lower court record that the trial court denied plaintiffs the opportunity to respond to LDLA's motion for summary disposition. There was no order barring plaintiffs from filing a response to LDLA's motion, and plaintiffs had notice of LDLA's filing of its motion for summary disposition. There were approximately 1½ months between the filing of LDLA's motion for summary disposition and the trial court's issuance of its opinion and order granting LDLA's motion, during which time plaintiffs could have filed a response. Although plaintiffs' counsel represented at oral argument before this Court that the trial court's clerk indicated to him over the phone that no response could be filed, there is no record evidence of that call. But, if it is true, the trial court should refrain from any further practice. The court rules require a party to respond to a motion, or face the consequences of failing to do so. If the trial court determined that the existing briefs (both parties had filed motions for summary with supporting briefs) were adequate to resolve the issues, it could have indicated as much in an order, which could then be subject to appellate review. However, because plaintiffs had submitted a brief supporting their position why summary disposition should be entered in their favor, any error in not allowing a response was harmless. MCR 2.613(A).

Additionally, the trial court had the discretion to decline to hold oral argument, and there is nothing to suggest that the trial court's decision to decide the parties' motions without oral argument was an abuse of discretion. *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 709; 609 NW2d 607 (2000). At the time of its decision, the trial court had the benefit of LDLA's brief in support of its motion for summary disposition, plaintiffs' brief in support of their motion for summary disposition, both parties' trial briefs, and the subdivision plat, restrictions, membership applications, dock management plans, and other documents that the parties relied on in their briefs.

I would affirm.

/s/ Christopher M. Murray