*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GM, Next Friend of RM, Minor,

      Petitioner-Appellee,

v

LM,

      Respondent-Appellant.

UNPUBLISHED
August 18, 2025
11:45 AM

No. 370439
Eaton Circuit Court
LC No. 2024-000156-PH

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Respondent appeals as of right Eaton Circuit Judge Janice K. Cunningham's March 2024 order denying her motion to terminate the ex parte personal protection order (PPO) against her issued at the request of petitioner, who was acting on behalf of RM, his son and respondent's great-grandson. On appeal, respondent argues that the trial judge violated the Michigan Code of Judicial Conduct, that the judge was biased and relied on false information, and that respondent's reputation was damaged as the result of the judge's conduct. We find no merit in these arguments and so affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case began after RM's father and step-mother asked respondent to stay away from RM but respondent refused to respect their wishes. On June 20, 2023, respondent was notified by RM's step-mother via text message that respondent was no longer allowed around RM. Respondent disregarded those text messages and attended RM's T-ball games and wrestling meets.

At one of those wrestling meets, respondent grabbed RM's wrist tightly and pulled him in for a kiss on the lips, which made the child uncomfortable. After RM's step-mother asked respondent to leave, respondent video recorded RM's meet and lingered around the players' bench. Another time, respondent attended a school performance, and RM asked a teacher to escort him into the gym because he did not want respondent to grab him. Petitioner then filed for a PPO to

protect RM from respondent, in which petitioner expressed concerns about future stalking or even kidnapping. The court issued a nondomestic PPO set to expire on February 19, 2025.[1]

Respondent moved to terminate that PPO. At the hearing on the motion, respondent asserted that she was RM's great-grandmother. The trial court reminded respondent that her familial relationship did not matter. A parent may prohibit others from contacting his or her child and obtain a PPO for that purpose. Respondent further protested that she was merely wishing to attend public events, but the court stated that if respondent was found to have violated the stalking statute a PPO could properly restrict her from attending events in which RM was involved.

Thereafter, the court requested testimony regarding notice given to respondent to stay away from RM, and stated that if respondent had received such notice then the PPO was going to stay in place. Respondent declined to take the stand, and the trial court denied the motion to terminate the nondomestic PPO.

This appeal followed.

## II. PERSONAL PROTECTION ORDER

Respondent argues the trial court abused its discretion by improperly entering and continuing the PPO on the basis of false information. We disagree.

This Court reviews the trial court's decision to grant or deny a PPO, including a decision to terminate a PPO, for an abuse of discretion. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes." *Id*. at 463-464 (quotation marks and citation omitted). We review any underlying findings of fact for clear error. *Id*. at 464. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Id*. (quotation marks and citation omitted).

The purpose of PPOs is to protect individuals "who are maliciously followed, harassed, or intimidated by stalkers." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). A petition for a PPO is governed by our court rules, see MCR 3.701 *et seq*.; except as otherwise provided in MCL 600.2950 and MCL 600.2950a. *TT v KL*, 334 Mich App 413, 439; 965 NW2d 101 (2020). A petitioner bears the burden of proof when seeking to obtain an ex parte PPO and when seeking continuance of the PPO. *Pickering v Pickering*, 253 Mich App 694, 697, 699; 659 NW2d 649 (2002). "The trial court must consider the testimony, documents,

---

[1] The expiration of the subject PPO while this appeal was pending did not render respondent's objections moot because of the collateral consequences the subject of a PPO may suffer. See *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008) (holding that although the PPO had been terminated since the filing of the appeal, the entry of the PPO was not moot because it "may affect eligibility for a federal firearms license").

and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Hayford*, 279 Mich App at 326.

The PPO was issued under the nondomestic PPO statute, MCL 600.2950a; which as relevant to this appeal addresses stalking behavior. A court may not grant a nondomestic PPO "unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code . . . ." MCL 600.2950a(1). Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(e). In the context of stalking, " '[c]ourse of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). Further, harassment is defined as "continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(d). Unconsented contact includes any contact with a person that is started or continued without his or her consent or against his or her express wishes, including following or appearing within that person's sight or approaching and confronting that person in a public place. *Hayford*, 279 Mich App at 330; MCL 750.411h(1)(f).

The record reflects that respondent was repeatedly told not to have contact with RM and that she was not welcome at RM's events. Despite these communications, respondent continued to insert herself into RM's extracurricular activities. The trial court correctly reminded respondent that being RM's great-grandmother did not give her the right to have time with him. Ultimately, RM's father and step-mother were in control of whom they wanted around RM, and because that wish was not respected, the trial court properly issued the PPO.

Respondent did not testify below, and so did not deny that she was told to stay away from RM[2] or deny that she continued to appear at his extracurricular activities. On appeal, respondent also acknowledges "the rights of the parent of [RM] to determine who[m] [RM] can see." We therefore conclude that respondent has failed to show that the trial court lacked a reasonable basis for issuing, and continuing, the PPO.

## III. JUDICIAL MISCONDUCT

Respondent argues that Judge Cunningham should have sua sponte recused herself from this case because Judge Cunningham had earlier heard and decided a custody dispute between petitioner and RM's mother. Respondent further suggests that, by relying on information gleaned from those proceedings, and also alleged falsehoods in the petition initiating this case, that Judge Cunningham violated the Michigan Code of Judicial Conduct.

---

[2] On appeal, however, respondent protests that, "If [RM]'s father had <u>ever</u> stated, before the PPO was filed, that [respondent] could not attend [RM]'s social events, it would not have been an issue".

Because respondent did not raise any claim of judicial bias or misconduct in the trial court, this issue is not preserved. We therefore review this issue for plain error affecting respondent's substantial rights. *HMM v JS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367586); slip op at 4. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *CAJ*, 339 Mich App at 464 (quotation marks and citation omitted). *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). But "[a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. See also *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Various nonexclusive grounds for disqualification are set forth in MCR 2.003(C):

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [alteration in original.]

Disqualification is also warranted when a judge has more than a "de minimis interest that could be substantially affected by the proceeding[.]" MCR 2.003(C)(1)(g)(*iii*). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible' and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001), quoting *Cain*, 451 Mich at 496. In fact, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009). An appearance of impropriety may arise when the conduct of a judge "would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Caperton*, 556 US at 888 (quotation marks and citation omitted).

In this case, respondent's only basis for alleging bias on Judge Cunningham's part was that she had gained access to certain information from the custody case, but neither specifies any instance of such impropriety, nor cites authority in support of her position. A party's mere assertion that the party's rights were violated, unaccompanied by record citations, cogent argument, or supporting authority, is insufficient to present this issue for this Court's consideration. See MCR 7.212(C)(7); *Rickner v Frederick*, 459 Mich 371, 377 n 6; 590 NW2d 288 (1999). Respondent has thus failed to provide this Court with any basis for crediting her claim of judicial bias.

Respondent additionally argues that innuendoes about respondent's drug use in the custody case, and such allegations in the petition of this case, as accepted by Judge Cunningham, were false and defamatory.

> "A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 702; 609 NW2d 607 (2000).

> > The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). [*Id*.]

Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried. *Mundy v Hoard*, 216 Mich 478, 491; 185 NW 872 (1921); *Couch v Schultz*, 193 Mich App 292, 294-295; 483 NW2d 684 (1992). "The immunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits." *Lawrence v Burdi*, 314 Mich App 203, 217; 886 NW2d 748 (2016) (quotation marks and citation omitted).

As an initial matter, we note that possible damage to respondent's reputation was in no way at issue in the proceedings below, which were attendant to a PPO case, not a defamation action, and therefore engendered no decision from the trial court for us to review. Further, Judge Cunningham made clear that her findings were based on the stalking statute and the notice respondent received to stay away from RM. Respondent cites no authority according to which Judge Cunningham was not acting within her authority. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) (arguments not supported by authority are deemed abandoned); *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 14; 527 NW2d 13 (1994) ("This Court will not search for authority to sustain or reject a party's position."). There is no evidence that Judge Cunningham did anything other then seek to fairly and impartially apply the law to the facts of the case. The trial court's order denying respondent's motion to terminate the personal protective order is fully supported by the facts of record and the law. For these reasons, we reject respondent's claim of judicial misconduct.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi